## THOMAS MILLETT

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon June 12, 1886.*

1. CONSTITUTIONAL LAW—*deprivation of rights—what is "due process of law."* The words "due process of law," in the constitutional provision "that no person shall be deprived of life, liberty or property without due process of law," are synonymous with the words "the law of the land," which mean general public law, binding upon all the members of the community under all circumstances, and not partial or private laws, affecting the rights of private individuals or classes of individuals.

2. MINES AND MINING—*the weighing of coal at the mines, and keeping scales for that purpose—right of persons to make their own contracts in that regard.* Section 29, article 4, of the constitution, which enjoins legislation in the interest of miners, means legislation for the personal safety of miners, and relates only to the enactment of police regulations to promote that end.

3. So far as the owner or operator of a mine shall contract for the mining of coal, or the selling of coal by weight, there is no constitutional objection to the statutes imposing upon him the duty of procuring scales for that pur-

pose; but when he has no necessity for the use of scales in these respects, he can not be compelled to keep and use them.

4. So much of the act of 1885, amendatory of the act of 1883, providing for the weighing of coal at mines, as provides that all contracts for the mining of coal, in which the weighing of the coal, as provided for in that act, shall be dispensed with, shall be null and void, is in violation of the constitution.

5. It is not competent for the legislature, under the constitution, to single out owners and operators of coal mines, and provide that they shall bear burdens not imposed on other owners of property or employers of labor, and prohibit them from making contracts which it is competent for other owners of property or employers of labor to make. Such legislation can not be sustained as an exercise of the police power.

6. SAME—*use of private property to supply statistics for the public—the element of eminent domain considered.* The legislature has not the power to require the owners and operators of coal mines in this State to furnish scales, and employ a person to use them and keep books of entries of weights, for the benefit or information of the public, without first making compensation to the owners, that being tantamount to an appropriation to public use of private property, which is the cost of the scales, and a clerk to keep the books.

7. The constitution prohibits the legislature from imposing the burden upon any corporation or individual not acting under a license or by virtue of a franchise, of buying property and hiring labor merely to furnish public statistics, unless upon due compensation to be paid therefor.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. WILDERMAN & HAMILL, for the appellant:

The act entitled "An act to provide for the weighing of coal at the mines," passed in 1883, as amended by the act of 1885, (Laws of 1885, p. 221,) is unconstitutional, in depriving the owners of coal mines of the right to make contracts for their free use and enjoyment. The right of the individual to make contracts for the use and enjoyment of property, is a right of property, which consists of the free use, enjoyment and disposal of all his acquisitions, without any control or diminution, save only by the law of the land. (1 Cooley's Black. Com. 137.) This right is guaranteed to every person by the constitution. Art. 2, sec. 5.

A regulation made for any one class of citizens or property owners, as this, is entirely arbitrary in its character, and, restricting their rights, privileges or legal capacities in a manner before unknown to the law, can not be sustained, notwithstanding its generality.   To forbid an individual or a class the right to the acquisition or use or enjoyment of property in such a manner as should be permitted to the community at large, would be to deprive them of liberty in particulars of primary importance to their pursuit of happiness.  Cooley's Const. Lim. 485-487; *Wynehamer* v. *People,* 13 N. Y. 433.

When the rights connected with and flowing from property are either abridged or destroyed, the value of the tangible, physical thing itself is destroyed.   Cooley's Const. Lim. 477.

The making of contracts for wages between the owners of coal mines and the men employed by them, does not come within the police power of the State.   Cooley's Const. Lim. 737, 739.

It is not within the power of the legislature, under the pretence of exercising the police power of the State, to enact laws, not necessary to the preservation of the health and safety of the community, that will be oppressive and burdensome upon the citizen.  *Railroad Co.* v. *Jacksonville,* 67 Ill. 40; *King* v. *Davenport,* 98 id. 314.

The legislature has no power, under the pretence of exercising the police power, to pass laws impairing the obligation of contracts, or to take or impair private property for public use.  *Commonwealth* v. *Canal Co.* 66 Pa. St. 50; *Crenshaw* v. *Slate River Co.* 6 Rand. 264; *Miller* v. *Railroad Co.* 21 Barb. 518; *People* v. *Railroad Co.* 9 Mich. 307.

The contracts of this coal company with its employes, to mine coal at so much per box, were made long before this act passed or went into effect, and the legislature had no power to interfere with or abrogate such contracts.  *Railroad Co.* v. *Railroad Co.* 79 Ill. 121; *Mix* v. *Vail,* 86 id. 40.

Mr. George Hunt, Attorney General, for the People:

The constitution recognizes the operation of coal mines as a special subject for legislation, and experience has demonstrated, that not only the legislation which the constitution makes it the duty of the General Assembly to adopt for the protection of the health and safety of miners, is necessary, but that it is also necessary to adopt legislation to protect the rights of miners in their contracts with the owners and operators of mines.

The operation of coal mines usually involves large amounts of capital and powerful individual combinations, against which the individual miner is powerless if left to the ordinary remedies which apply to business transactions generally. The General Assembly, recognizing these necessities for special protection, has placed upon the statutes the law in question, for the purpose of affording proper protection to an otherwise helpless class, as well as on the grounds of public policy in the respects hereinbefore referred to.

The legislature has power to regulate weights and measures, and compel dealers to conform to the fixed standards, and to provide penalties for a failure to conform. Cooley's Const. Lim. 749; Rev. Stat. chap. 147, p. 1175.

The constitutional provision prohibiting the deprivation of property, is not infringed by the proper regulation of a business which may render the property used less valuable. *Munn* v. *People*, 69 Ill. 80.

The legislature has power, under the constitution, to establish reasonable police regulations for the operation of mines, and the question whether a requirement is a police regulation, is a legislative one. *Daniels* v. *Hilgard*, 77 Ill. 640.

Every subject within the domain of legislation, not withdrawn from it by the constitution of the State or the United States, can be dealt with by the General Assembly, by general laws to affect the whole State and all the people within it. *Munn* v. *People*, 69 Ill. 80.

We maintain that the General Assembly is not forbidden by the constitution to pass laws regulating the business of operating coal mines, and not being forbidden to pass such laws, it has full power to enact such legislation in regard thereto as it may deem wise, and as best conduces to the public good.

The duty of the court is to uphold a statute when the conflict between it and the constitution is not clear. *Newland* v. *Marsh*, 19 Ill. 385; *Johnson* v. *Railroad Co.* 23 id. 207.

What is there to make contracts in relation to mining coal less within that power, or to prohibit the legislature from requiring the operators of mines to keep a record of the amount of coal hoisted? All these matters are of public interest, and the legislature has wisely so determined.

If the operation of a coal mine is a business affected with a public interest, and of this we believe there can remain no doubt, then such business may be regulated by statute. *Munn* v. *People*, 94 U. S. 113.

Mr. JAMES M. DILL, also for the People.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The defendant was indicted and convicted of failing, as the agent of the owner of a certain coal mine, to cause to be furnished and placed upon the railroad track, adjacent to the coal mine, a track scale of standard measure, upon which to weigh the coal hoisted from the mine, as provided by section 1 of "An act to provide for the weighing of coal at the mines," approved June 14, 1883, and the several sections of the act to amend sections 2, 3 and 4 of that act, approved June 29, 1885.

We held in *Jones* v. *The People*, 110 Ill. 590, that it was competent to show, in defence of a person indicted under the same section before the approval of the amendatory act of June 29, 1885, that at the time the act took effect, and long

prior thereto, the corporation in that case owning and opera-
ting the coal mine had a contract with all the men employed
to mine coal in that mine, during that period, to receive, as
the wages for their labor, from said company, the sum of
forty cents per box for each box of coal mined and taken from
said mine; that all the persons employed in the mine to
mine coal for said company, had always been and were then
perfectly satisfied to work under said contract, and that they
did not want the coal taken from the mine weighed, as a basis
upon which to compute their wages, etc. It was, in consider-
ing this question, among other things then said: "Although
section 2 does provide that the weight determined by weigh-
ing on the scales furnished shall be considered the basis upon
which the wages of persons mining coal shall be computed,
we do not regard this as requiring that in all contracts for
the mining of coal, the wages of the miners must be computed
upon the basis of the weight of the coal mined. That would
be a quite arbitrary provision,—seemingly an undue interfer-
ence with men's rights of making contracts,—and we can not
ascribe to the legislature the making of .such an enactment
unless it be plainly declared, which is not done in this case."

The second section of the amendatory act, approved June
29, 1885, requires that all coal produced in this State shall
be weighed on the scales, as provided in section 1 of the act
approved June 14, 1883, and that a correct record of the
same shall be kept, in a well bound book furnished by the
owner, agent or operator of such mine for that purpose, by
a competent person, at the expense of such owner, agent or
operator,—said record to be subject to the inspection (at all
reasonable business hours) of the miner, operator, carrier,
land owner, adjacent land owner, members of the Bureau of
Labor Statistics, mine inspectors, and all others interested.
Section 3 provides that it shall .be lawful for the miners em-
ployed in any coal mine or colliery in this State, to furnish
a check weigher, at their own expense, whose duty it shall

be to balance said scales, and see that the coal is properly weighed, and keep a correct account of the same; and for this purpose he shall have access, at all times, to the beam box of said scales while such weighing is being performed. The fourth section provides that a fine, or fine and imprisonment, as prescribed, shall be imposed on any owner or agent operating a coal mine, failing to comply with these provisions. And another section provides that all contracts for the mining of coal, in which the weighing of the coal, as provided for in that act, shall be dispensed with, shall be null and void.

The court, at the instance of the People, instructed the jury, that since the first day of July, 1885, the law prohibits the making of any contracts between the operators of coal mines and the miners, in which the weighing of coal, as provided by law, is sought to be avoided, and the court refused to instruct the jury "that if they believe, from the evidence, that the company for which the defendant is working does not sell, or offer to sell, coal by weight at its mine at which defendant is employed, and that it has contracts with all the men employed in its mine to mine coal at twenty-five or twenty cents per box, then the jury should find the defendant not guilty."

There was evidence before the jury on which to predicate this instruction. The question is thus presented, whether it is competent for the General Assembly to single out owners and operators of coal mines as a distinct class, and provide that they shall bear burdens not imposed on other owners of property or employers of laborers, and prohibit them from making contracts which it is competent for other owners of property or employers of laborers to make.

It is declared in section 2, article 2, of our constitution, that "no person shall be deprived of life, liberty or property without due process of law." And section 13 of the same article provides that private property shall not be taken or

damaged for public use without just compensation.   The
words, "due process of law," in this connection, are held to·
be synonymous with the words "the law of the land."   Cooley
on Const. Lim. (1st ed.) pp. 352–3.   And this means general
public law, binding upon all the members of the community,
under all circumstances, and not partial or private laws,
affecting the rights of private individuals or classes of indi-
viduals.   *Jones* v. *Reynolds*, 2 Texas, 251.   See, also, *Wyen-
heimer* v. *The People*, 13 N. Y. 432; *Vanzandt* v. *Waddell*, 2
Yerger, 269.

"Every one," says Cooley, (Const. Lim. 1st ed. page 391,)
"has a right to demand that he be governed by general rules,
and a special statute that singles his case out as one to be
regulated by a different law from that which is applied in all
similar cases, would not be legitimate legislation, but an arbi-
trary mandate, unrecognized in free government.   Mr. Locke
has said of those who make the laws :   'They are to govern
by promulgated, established laws, not to be varied in partic-
ular cases, but to have one rule for rich and poor,—for the
favorite at court and the countryman at plough.'   And this
may justly be said to have become a maxim in the law by
which may be tested the authority and binding force of legis-
lative enactments."   And, again, the same authority says,
(p. 393) :   "The doubt might also arise whether a regulation
made for any one class of citizens, entirely arbitrary in its
character, and restricting their rights, privileges or legal ca-
pacities in a manner before unknown to the law, could be
sustained.   Distinctions in these respects should be based
upon some reason which renders them important,—like the
want of capacity in infants and insane persons ; but if the
legislature should undertake to provide that persons following
some specified lawful trade or employment should not have
capacity to make contracts, or to receive conveyances, or to
build such houses as others were allowed to erect, or in any
other way to make such use of their property as was permis-

sible to others, it can scarcely be doubted that the act would transcend the due bounds of legislative power, even if it did not come in conflict with express constitutional provisions. The man or the class forbidden the acquisition or enjoyment of property in the manner permitted to the community at large, would be deprived of *liberty* in particulars of primary importance to his or their pursuit of happiness." See, also, *Budd* v. *The State*, 3 Humph. 483, where one of the sections of the act incorporating the Union bank, which provided that if any of the officers, agents or servants of that bank should embezzle the funds of the bank, or make false entries, they should be guilty of felony, was held unconstitutional, because it did not apply generally to officers, agents or servants of banks committing like offences. And *Wally's Heirs* v. *Kennedy*, 2 Yerg. 554, where an act authorizing the court to dismiss Indian reservation cases where prosecuted for the use of another, was held unconstitutional. In the last case the court said: "The rights of every individual must stand or fall by the same rule or *law* that governs every other member of the body politic, or land, under similar circumstances; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals or corporate bodies would be governed by one law, the mass of the community and those who made the law, by another; whereas a like general law, affecting the whole community equally, could not have been passed." On like principle is, also, *The People* v. *Marx*, 99 N. Y. 377.

What is there in the condition or situation of the laborer in the mine to disqualify him from contracting in regard to the price of his labor, or in regard to the mode of ascertaining the price? And why should the owner of the mine, or the agent in control of the mine, not be allowed to contract in respect to matters as to which all other property owners and

agents may contract? Undoubtedly, if these sections fall within the police power, they may be maintained on that ground; but it is quite obvious that they do not. Their requirements have no tendency to insure the personal safety of the miner, or to protect his property, or the property of others. They do not meet Dwarris' definition of police regulations. They do not have reference to the comfort, the safety or the welfare of society. (Potter's Dwarris on Statutes, 458.) In *Austin* v. *Murray*, 16 Pick. 121, it was said: "The law will not allow the rights of property to be invaded under the guise of a police regulation for the promotion of health, when it is manifest that such is not the object and purpose of the regulation." See, also, to like effect, the language of COLT, J., in *Watertown* v. *Mayo*, 109 Mass. 315, and the opinion of the court and cases referred to in *Matter of application of Jacobs*, 98 N. Y. 109, *et seq.*, and *The People* v. *Marx, supra.*

But it is suggested, in argument, that one purpose of the sections is to furnish needful information to the public. If that be so, then, under section 13, article 2, *supra,* there must first be made compensation to the owner of the property thus to be devoted to public use; for it must be too apparent to need argument in its support, that to compel the purchasing of scales, and the employing of a person to use them, for the benefit of the public, is to appropriate the private property,— *i. e.,* the money which this will cost,—to public use. *Morse* v. *Stoeker*, 1 Allen, 150; *State* v *Glenn*, 7 Jones' L. 321.

The main reliance of the counsel representing the State, to sustain the ruling below, seems, however, to be on the ground that mining for coal is affected with a public use, so that it may be regulated by law, like public warehouses, as held in *Munn* v. *Illinois*, 94 U. S. (4 Otto,) 113. It can not be claimed that mining for coal was, by the common law, affected with a public use, and therefore specially regulated by law, like the business of inn-keepers, common carriers, millers, etc.; and, in our opinion, it is not, like the business of public

warehousing, within the principle controlling such classes of business. The public are not compelled to resort to mine owners any more than they are compelled to resort to the owners of wood, or turf, or even to the owners of grain, domestic animals, or to those owning any of the other ordinary necessaries or conveniences of life which form a part of the commerce of the country. The owner of a coal mine is under no obligation to obtain a license from any public authority, and therefore when he chooses to mine his coal he exercises no franchise. We are aware of no case wherein it has been held that the owner or operator of a coal mine stands on a different footing, as respects the control and sale of his property, than the owner or operator of any other kind of property in general demand by the public.

We are not unmindful that our constitution, in section 29, article 4, enjoins legislation in the interest of miners; but this is solely as respects their personal safety,—the enactment of police regulations to promote that end. It recognizes that the business is dangerous to life and health, but it nowhere intimates that there is anything in it which disqualifies parties engaged in it from contracting as they may in regard to other matters, or that gives the public a use in it. There is, also, in section 5, article 13, a provision requiring railroad companies to permit connections to be made with their tracks, so that coal banks or coal yards may be reached; but the same provision also applies to consignees of grain, and it affects the duty of the carrier alone, for no duty or obligation is enjoined on the owner of the coal bank or coal yard in that respect. We recognize fully the right of the General Assembly, subject to the paramount authority of Congress, to prescribe weights and measures, and to enforce their use in proper cases; but we do not think that the General Assembly has power to deny to persons in one kind of business the privilege to contract for labor and to sell their products without regard to weight, while at the same time allowing to per-

sons in all other kinds of business this privilege, there being nothing in the business itself to distinguish it in this respect from any other kind of business; and we deny that the burden can be imposed on any corporation or individual not acting under a license or by virtue of a franchise, of buying property and hiring labor merely to furnish public statistics, unless upon due compensation to be made therefor.

So far as the owner or operator of a mine shall contract for the mining of coal or the selling of coal by weight, we see no objection to the statute as imposing upon him the duty of procuring scales for that purpose. But we do not think that he can be compelled to make all his contracts in these respects to be regulated by weight, and when he has no necessity for the use of scales in these respects, he can not, in our opinion, be compelled to keep and use them. We think the court erred in its ruling in giving the one and refusing the other instruction.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*