Frank E. Vogel, impleaded, etc.

v.

John Pekoc.

*Filed at Ottawa June 15, 1895—Rehearing denied October 28, 1895.*

1. Contracts—*acceptance of contract is equivalent to formal execution.* The acceptance by the master of a written contract of employment signed by the servant is equivalent to its formal execution by the master.

2. Same—*want of mutuality renders contract invalid.* A contract to employ a person to work "from time to time," the service to continue "only so long as satisfactory" to the employer, and which provides a forfeit if the servant quits without specified notice, is void for want of mutuality, and such forfeit cannot be set off against wages due.

3. Constitutional law—*statute allowing attorney's fees in suits for wages, constitutional.* The statute giving the right to recover attorney's fees in suits for wages (Laws of 1889, p. 362,) is not in conflict with the constitutional provision against special or class legislation, since it applies to all persons similarly engaged. *Millett* v. *People,* 117 Ill. 294, *Frorer* v. *People,* 141 id. 171, *Ramsey* v. *People,* 142 id. 380, and *Braceville Coal Co.* v. *People,* 147 id. 66, distinguished. (Magruder, J., dissenting.)

Appeal from the Superior Court of Cook county; the Hon. John Barton Payne, Judge, presiding.

Dupee, Judah & Willard, for appellant:

The precise question raised in this case has been passed on by the courts of Massachusetts and Pennsylvania. *Preston* v. *Linen Co.* 119 Mass. 400; *Iron and Steel Co.* v. *Good,* 116 Pa. St. 385.

A contract signed by one and accepted by the other is binding. *Short* v. *Keiffer,* 142 Ill. 258.

Special or private laws affecting the rights of private individuals or classes of individuals are void. Const. sec. 19 of art. 2; sec. 22 of art. 4; sec. 2 of art. 2; *Coal Co.* v. *People,* 147 Ill. 66; *Ramsey* v. *People,* 142 id. 380; *Frorer* v. *People,* 141 id. 171; *Millett* v. *People,* 117 id. 294.

Olson, Frazier & Bantle, for appellee.

Mr. Chief Justice Craig delivered the opinion of the court:

This was an action originally brought before a justice of the peace by John Pekoc, against Nelson Morris, Frank E. Vogel and Edward Morris, a firm doing business as Nelson Morris & Co., to recover the sum of $25 for wages claimed to be due as a cooper. On a trial before the justice the plaintiff recovered the amount claimed, and the defendants appealed to the Superior Court of Cook county, where a jury was waived and a trial had before the court, resulting in a judgment for the amount sued for, and also attorney's fees. To reverse this latter judgment the defendants have appealed to this court.

The defendants requested the court to hold the following propositions of law, but the court refused so to hold, and this ruling is relied upon as error :

1. "That the evidence in the case is not sufficient, in law, to sustain a finding for the plaintiff.

2. "That the act providing for attorneys' fees in suits for wages, approved June 1 and in force July 1, 1889, is unconstitutional and void.

3. "That the evidence in the case does not show a suit for wages, within the meaning of said act, and that no attorneys' fees can be allowed thereunder."

The evidence shows that plaintiff worked as a cooper for Nelson Morris & Co., and that there was a balance in their hands, for wages unpaid, of $25. The defendants, however, claim that the amount said to be due was forfeited, for the reason that plaintiff quit the services of defendants without giving two weeks' notice, as they claim he was required to do under a contract in writing which they put in evidence, as follows :

"This agreement, made and signed this 12th day of September, 1892, between Fairbank Canning Company and Nelson Morris & Co., the parties of the first part, and John Pekoc, the party of the second part:

"*Witnesseth*, the said parties of the first part agree to employ the said party of the second part to perform such

work as they may assign to him from time to time, such service to continue only so long as satisfactory to the said parties of the first part. And in consideration of such employment, and the peculiar nature of the business of the said first parties, and of the wages to be paid by the parties of the first part, the said second party agrees that he will not quit said service and employment without giving two weeks' notice, in writing, to said first parties of his intention so to do, and as a guaranty for the faithful performance of this agreement on his part the said party of the second part agrees to deposit with said first parties the sum of $25, and in case of the violation of this agreement by said second party the said first parties shall retain said amount as liquidated damages, and in satisfaction and payment of all damages by them sustained. It is further agreed that the said first parties shall retain $2.50 per week of the wages earned by said second party until said sum of $25 shall be in their hands, to be held by them according to the terms of this agreement.

JOHN PEKOC.        [SEAL.]

.............................................................[SEAL.]

.............................................................[SEAL.]"

On the other hand, the plaintiff insists that the contract is void for the want of mutuality.

It will be observed that the written contract was not signed by the parties named therein as parties of the first part, and it is insisted by the plaintiff, that as they failed to sign the contract it never became binding on him or any other person. The acceptance of the contract by the parties of the first part, and holding it and acting upon it as a valid instrument, may be regarded as equivalent to its formal execution on their part, as held in *Johnson* v. *Dodge*, 17 Ill. 433, and *Short* v. *Kieffer*, 142 id. 258. Regarding the contract in the same way, it would be treated as if it had been signed by the persons named as parties of the first part.

The next question to be determined is whether the contract is mutual. It is a general rule, well understood, that a contract between parties must be mutual. (*Weaver* v. *Weaver*, 109 Ill. 225; Chitty on Contracts, 15; Bishop on Contracts, sec. 78, p. 32; *Tucker* v. *Woods*, 12 Johns. 190.) In the case last cited it is said : "In contracts, where the promise of the one party is the consideration for the promise of the other, promises must be concurrent, and obligatory upon both at the same time." (1 Chitty, 297; 1 Carnes, 594.) In Chitty on Contracts, *supra*, the author says : "The agreement, as before observed, must, in general, be obligatory upon both parties. There are several cases satisfactorily establishing, that if the one party never were bound, on his part, to do the act which forms the consideration for the promise of the other, the agreement is void, for want of mutuality." In 1 Wharton on Contracts, page 5, the author says : "The parties to a contract, therefore, must both be bound. Supposing that one promise in consideration of the promise of the other, the one is not bound unless the other is bound. A promise to do a thing on an executed consideration is not a contract; nor is a promise to do a thing in consideration of an illegal or impossible engagement on the other side. Without this reciprocal obligation no contract can be constituted. 'It is a general principle,' says Mr. Fry, 'that when, from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other party though its execution in the latter way might in itself be free from difficulty attending its execution in the former.'"

Upon looking into the contract read in evidence, it will be found that the parties of the first part practically agree to do nothing, and there is substantially no obligation imposed upon them by the contract. The only portion of the contract claimed to impose any obligation on the parties of the first part is the following : "The said

parties of the first part agree to employ the said party
of the second part to perform such work as they may
assign to him from time to time, such service to continue
only so long as satisfactory to the said parties of the
first part." What obligation does this impose? When
are they to employ the party of the second part? What
sum are they to pay? How long is the employment to
continue? Suppose they refuse to employ the party of
the second part; can an action for damages be main-
tained for a breach of the contract? The answer to these
inquiries is obvious. We think it is plain that the parties
of the first part were not bound, under the terms of the
contract, to employ the party of the second part for a
single day or hour, and if they had absolutely refused to
employ him he was without remedy in any court of the
country. It may be true that the plaintiff might have
entered into a contract which would require him to give
two weeks' notice before he could quit the services of
his employer without being liable to respond in damages,
as might reasonably be provided in the contract; but no
such case is presented by this record. Here the contract
imposes no obligation on one of the parties, and hence it
is void for the want of mutuality.

The contract being void, it will not be necessary to
inquire whether the amount which it was provided might
be retained was a penalty or liquidated damages.

It is next claimed that the court erred in allowing at-
torney's fees. This involves a construction of an act of
June 1, 1889, (Laws of 1889, p. 362,) which in substance
provides, that whenever a mechanic, artisan, miner,
laborer, servant or employee shall have cause to bring
suit for wages, and shall establish, by the decision of the
court or jury, that the amount is justly due and owing,
and that demand has been made in writing, etc., then it
shall be the duty of the court to allow the plaintiff, when
the foregoing facts appear, a reasonable attorney's fee
in addition to the wages. It is claimed that the statute

is private or special legislation, and hence is in conflict with that provision of the constitution prohibiting special legislation. It is true, this statute does not provide that all persons who may recover judgments may, at the same time, recover attorney's fees, but the recovery is restricted to a designated class of persons, and legislation of this character has never been regarded obnoxious to the constitution. Indeed, in *Hawthorn* v. *People*, 109 Ill. 302, it was expressly held that a statute is not obnoxious to the constitutional objection that it is not a general law because it applies to a class of persons. It is a general law if it applies to all persons in the State similarly engaged. (See, also, *Potwin* v. *Johnson*, 108 Ill. 70, where the same doctrine is announced.) The statute in question confers the right to recover attorney's fees upon a certain class of persons who bring actions to recover for wages. All persons who bring such actions fall within its provisions, and hence it is in no sense special legislation.

We think the judgment of the Superior Court, upon the facts as they appear in the record, correct, and it will be affirmed.                      *Judgment affirmed.*

Additional opinion on petition for rehearing :

Per CURIAM : The petition for rehearing filed in this cause greatly emphasizes the previous contention that the act of 1889, providing that a reasonable attorney's fee shall be allowed to successful plaintiffs in suits for wages, to be taxed as costs, is a partial and special statute, working deprivation of property without due process of law, and therefore unconstitutional. Reliance is placed in *Millett* v. *People*, 117 Ill. 294, *Frorer* v. *People*, 141 id. 171, *Ramsey* v. *People*, 142 id. 380, and *Braceville Coal Co.* v. *People*, 147 id. 66, as sustaining the position taken. Those cases do not, however, control the present case or decide the question here involved. Without discussing

separately the facts of the cases relied upon, it may be said, generally, that in each of those cases a principal and controlling question was the right of miners of coal (no less than their employers) to make contracts regulating the time and manner of the payment of wages and the method of computing such wages, and in each case cited a law restricting in some manner this important right of contract was held invalid. It was, with great propriety, said that the privilege of contracting is both a liberty and a property right, of which a portion of the people can not be deprived by an arbitrary statute and without due process of law. It was further said (*Braceville Coal Co.* v. *People, supra,* p. 75): "The right to contract necessarily includes the right to fix the price at which labor will be performed and the mode and time of payment. Each is an essential element of the right to contract, and whosoever is restricted in either, as the same is enjoyed by the community at large, is deprived of liberty and property." It might, perhaps, have been said, with equal propriety, that no legislative act, however general and universal its application, could invade the fundamental right of the citizen to make contracts not against public policy or injurious to society.

The statute here in question interferes with no one's right to contract. It embraces a well-defined class of cases and persons, not singled out, as is contended, wholly without reason, and arbitrarily, but upon grounds which may, we think, properly serve as a basis for valid legislative action. Those to whom the wages of labor are due, and who, after demand, in writing, of a sum no greater than that subsequently recovered, are compelled to establish and do establish their rights, as demanded, by judgment of court, are within the provisions of the act, and we cannot say this classification is so arbitrary and unreasonable, and the law so partial and unequal, as to be beyond legislative discretion and power.

If this law were to be held unconstitutional for the reasons assigned, then many other acts long in force in this State, hitherto deemed to be salutary, and against which no constitutional objection has been heard, would certainly fall with it. Why, for instance, should the seller of materials for a building have, by law, a lien for their price, not only upon the specific things sold, but upon the whole structure, with the land it stands on, while the seller of a horse, a piano or a corn-sheller is denied any lien, even on the specific thing sold ? Why should he whose labor constructs a house be secured by a lien on his product, while he who raises a crop must look only to the personal responsibility of his hirer ? Surely, it could be said the Lien law makes classes of beneficiaries quite as arbitrary in character as that marked out to receive benefit by the act under discussion.

Again, why should the wages of a defendant who is head of a family, to an amount not exceeding $50, be exempt from garnishment, (Laws of 1879, p. 176,) while sums due other defendants are protected by no such exemption ? And why, again, it might be asked, should *heads of families* earning wages be made the subject of advantageous provisions not applied to all other wage earners, if not to all other persons ? The general Exemption law also makes heads of families a distinct class, who may claim as exempt three hundred dollars' worth more of personal property than other judgment defendants are allowed, while a further section (Rev. Stat. 1874, p. 499,) declares that where a judgment is for the wages of a laborer or servant, and noted by the court as such, no personal property whatever shall be free from levy, whatever the estate or condition of the debtor.

An analogous case for this purpose is found in the provision of the general Assignment law, that "all claims for the wages of any laborer or servant which have been earned within three months next preceding the making of the assignment, etc., shall, after the payment of costs,

etc., be preferred and first paid, to the exclusion of all other demands." (Hurd's Stat. 1893, p. 166, sec. 6.)

It is difficult to see how any of these statutes, and many similar ones which might be named, could be sustained if the strict rule of constitutional validity, so strenuously urged in this case, were applied to them.

The petition for rehearing will be denied.

*Rehearing denied.*

Mr. JUSTICE MAGRUDER, dissenting:

I am unable to agree with so much of the opinion in this case as holds the act of June 1, 1889, to be a constitutional law. The act belongs to that species of class legislation which has been recently condemned by this court in the following cases: *Millett* v. *People,* 117 Ill. 294, *Frorer* v. *People,* 141 id. 171, *Ramsey* v. *People,* 142 id. 380, *Braceville Coal Co.* v. *People,* 147 id. 66, and *Ritchie* v. *People,* 155 id. 98.

In the case of *Hocking Valley Coal Co.* v. *Rosser,* 41 N. E. Rep. 263, the Supreme Court of Ohio has had occasion to consider and condemn a similar statute. The opinion in that case expresses what seems to me to be the correct view of the subject, and a quotation therefrom is hereinafter set forth as sufficiently indicating the reasons for this dissent

The Ohio statute (89 Ohio Laws, 59, sec. 6563 *a,*) provides: "If the plaintiff in any action for wages recover the sum claimed by him in his bill of particulars, there shall be included in his costs such fee as the court may allow, but not in excess of five dollars for his attorney. But no such attorney fee shall be taxed unless said wages have been demanded in writing and not paid within three days after such demand. If the defendant appeal from any such judgment and the plaintiff on appeal recover a like sum exclusive of the interest from the rendition of the judgment before the justice, there shall be included in his costs such additional fee not in excess of fifteen dollars for his attorney as the court may allow."

In the course of the opinion in the *Rosser* case the Ohio court says: "Upon what principle can a rule of law rest which permits one party, or class of people, to invoke the action of our tribunals of justice at will, while the other party, or another class of citizens, does so at the peril of being mulct in an attorney fee, if an honest but unsuccessful defense should be interposed? A statute that imposes this restriction upon one citizen, or class of citizens, only denies to him or them the equal protection of the law. It is true that no provision of the constitution of 1851 declares in direct and express terms that this may not be done; but, nevertheless, it violates the fundamental principles upon which our government rests, as they are enunciated and declared by that instrument in the bill of rights. The first section of the constitution declares that the right to acquire, possess and protect property is inalienable, and the next section declares, among other things, that 'government is instituted for the equal protection and benefit' of every person, while section 16 of article 1 provides that 'all courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and justice shall be administered without denial or delay.' The right to protect property is declared, as well as that justice shall not be denied, and every one entitled to equal protection. Judicial tribunals are provided for the equal protection of every suitor. The right to retain property already in possession is as sacred as the right to recover it when dispossessed. The right to defend against an action to recover money is as necessary as the right to defend one brought to recover specific real or personal property. An adverse result in either case deprives the defeated party of property. If the General Assembly has power to enact the statute in question, it could also enact one providing that lawyers, doctors, grocers or any other class of citizens might make out their accounts, demand

in writing their payment within a short time, which, if not complied with, would entitle the plaintiff to an attorney fee in addition to his claim, if he recovered the amount demanded. We do not think the General Assembly has power to discriminate between persons or classes respecting the right to invoke the arbitrament of the courts in the adjustment of their respective rights. The legislative power to compel an unsuccessful party to an action—generally the defendant—to pay an attorney fee to his opponent has received the attention of a number of courts of last resort, as well as laws which impose as a penalty double damages or some similar penalty for some wrongful or negligent act injurious to another. Where the penalty has been imposed for some tortious or negligent act, the statute has generally, though not always, been sustained; but, on the contrary, where no wrongful or negligent conduct was imputed to the de- ·feated party, any attempt to charge him with a penalty has not prevailed. (*Millett* v. *People*, 117 Ill. 294, (7 N. E. 631;) *State* v. *Fire Creek Coke and Coal Co.* 33 W. Va. 188, (10 S. E. 288;) *Durkee* v. *City of Janesville*, 28 Wis. 464; *Railroad Co.* v. *Morris*, 65 Ala. 193; *Wilder* v. *Railway Co.* 70 Mich. 382, (38 N. W. 289;) *Braceville Coal Co.* v. *People*, 147 Ill. 66, (35 N. E. 62;) *Wally's Heirs* v. *Kennedy*, 2 Yerg. 554; *Vanzant* v. *Waddel*, id. 260; *Railroad Co.* v. *Baty*, 6 Neb. 37; *State* v. *Loomis*, 115 Mo. 307, (22 S. W. 350;) *Railway Co.* v. *Wilson*, (Texas App.) 19 S. W. 910; *Railway Co.* v. *Duggan*, 109 Ill. 537.) Various phases of this subject have received attention in the foregoing cases, as well as in some others to which we do not deem it necessary to refer. The general tendency of these authorities is towards the result which we have reached; but, whether they do or do not support our conclusions, we are satisfied that the fundamental principles of government declared by our bill of rights clearly and unequivocally prohibit legislation of the character of that involved in this case. Judgment allowing an attorney fee reversed."