Allen v. Rouse, Hazard & Co.

---

## James S. Allen and Robert W. Rutherford v. Rouse, Hazard & Co.

1. CONTRACTS—*Void for Want of Mutuality.*—Where a contract imposes no obligation on one of the parties it is void for want of mutuality.

Assumpsit, on a contract. Trial in the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Finding and

judgment for plaintiff for nominal damages. Appeal by plaintiff. Heard in this court at the May term, 1898. Affirmed. Opinion filed September 26, 1898.

## STATEMENT.

James S. Allen and Robert W. Rutherford brought this action against Rouse, Hazard & Co., to recover their traveling expenses on a trip from Peoria to California and return, to which recovery they claimed to be entitled because of a breach by defendants of a contract between them. The declaration consisted of a single count, based upon a written contract and an alleged later oral contract between the parties, a breach of which was alleged. Defendants pleaded non-assumpsit. A jury was waived, and upon a trial there was finding and judgment for plaintiffs for one cent damages, from which judgment in their favor plaintiffs appeal.

Rouse, Hazard & Co. were manufacturers of bicycles named Overland and Sylph. The contract consisted in a lengthy written proposition by Rouse, Hazard & Co. to plaintiffs, dated January 6, 1897, and a written acceptance thereof by plaintiffs. The contract provided Rouse, Hazard & Co. were to furnish plaintiffs with samples of their bicycles, with printed matter and instructions, with a view to plaintiffs visiting persons engaged in that trade in California, Arizona, New Mexico, Utah and Colorado, during a trip of plaintiffs to those States, and taking orders and getting agents for Rouse, Hazard & Co. in various towns. It also provided Rouse, Hazard & Co. were to be at no expense whatever, and that plaintiffs, as their sole compensation, were to be paid a certain commission on the net amount Rouse, Hazard & Co. might receive for each wheel sold by them or sold during that season by agencies established by them. The contract did not say where nor how soon the samples were to be delivered to plaintiffs. Plaintiffs proved that before the contract was prepared and also after it was signed, there was talk between the parties to the effect that the samples were to be shipped to plaintiffs at Phoenix, Arizona, the low-priced Overlands immediately and the high priced Overland and the Sylph within seven days. Plaint-

iffs started on their journey January 7th, and on that day or a few days later, a trunk containing two bicycles was checked to Phoenix, by the route they were to take, as their baggage, and an order was given to the baggage agent showing another trunk was to be checked on January 12th.

Plaintiffs went to Indianapolis, Chattanooga, Birmingham New Orleans and San Antonio, making a stop at each place ranging from hours to days, and reached Phoenix on the morning of January 16th, and found there awaiting them the two bicycles first shipped, but not the high priced Overland nor the Sylph. They stayed there till the evening of January 20th, but made no attempt to sell any bicycles or to do any business under the contract. On the 19th they telegraphed to Rouse, Hazard & Co., " Been here four days; has Sylph been shipped ? Answer." The Sylph had not in fact been shipped, but the message, as received by Rouse, Hazard & Co. over the telephone, was misunderstood and was answered by wire that day, "Wheel shipped on 12th." On the 20th plaintiffs decided to do nothing with the bicycle contract and thereupon wired Rouse, Hazard & Co., " No Sylph here. Hold. Can not wait. Will ship Overland back." They then started again upon their journey, visited Redlands, Los Angeles, Riverside, San Francisco, Salt Lake City and Denver, staying from one to four days in each of those places, and from Denver returning direct to Peoria. They then sued Rouse, Hazard & Co. for their railroad fare and hotel and other expenses during the entire trip, claiming they had excursion rates on the railroad, and that their expenses were less than a regular trip directly from Peoria to Phoenix and return would have cost at the ordinary rates.

JAMES A. CAMERON, attorney for appellants.

STEVENS, HORTON & ABBOTT, attorneys for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

First. Plaintiffs testified they had had such a trip in view

in December previous, but had abandoned that purpose, and made this trip solely in reliance upon their contract with Rouse, Hazard & Co. The written proposition, signed by Rouse, Hazard & Co., and accepted by plaintiffs, begins by stating that Rouse, Hazard & Co. are advised plaintiffs contemplate a trip west, taking in California, Arizona, New Mexico, Utah and Colorado. We think the recitals of the contract better proof on that subject than the views plaintiffs now entertain as to what their purpose then was, and therefore we are of opinion they made this trip for their own pleasure.

Second. We are of opinion the written contract means that the sample wheels were to be furnished at Peoria, where the contract was made, and where the parties then were. If so, the prior conversations were merged in the writing and the later conversations were without consideration. If this view is correct, no contract is shown binding Rouse, Hazard & Co. to ship the bicycles to Phoenix, nor to deliver them at any particular date.

Third. But if Rouse, Hazard & Co. were under obligations to make the later shipment of bicycles within seven days from the date of the contract, and to send them to Phoenix, and were therefore guilty of a technical breach thereof, still plaintiffs did not take the course entitling them to substantial damages. They had part of the samples and had their printed matter and instructions. They should have either gone to work with such material as they had and accomplished whatever they could, or they should have waited the arrival of the other samples. They did neither. Although they received the telegram sent on the 19th, advising them the Sylph had been shipped on the 12th, which they did not know was a mistake but must have supposed to be true, yet they immediately, on the 20th, wired Rouse, Hazard & Co. abandoning the contract. We are of opinion that terminated their right to recover more than nominal damages.

Fourth. They could not recover their expenses on this trip under this contract, which expressly provided that

Rouse, Hazard & Co. were to be at no expense. We are not called upon to determine whether they could have recovered for their time and expenses at Phoenix while waiting for the other bicycles, for they decided not to wait. They lost whatever commissions they might have made. But no one can know that they would have made sales of any machines or would have earned any commissions, nor if they sold any, how many machines they would have sold, nor what commissions they would have been entitled to on account thereof, nor how great their expenses would have been in making such sales. We see no basis in the evidence for the allowance of more than nominal damages.

Fifth. It may well be doubted whether this contract was enforcible. There was no agreement by plaintiffs that they would work at this business any particular length of time or give any particular amount of labor or trouble to it. There was nothing which Rouse, Hazard & Co. could enforce against them except to return the sample bicycles. It rested wholly with plaintiffs to do as much or as little as they pleased under the contract. Where a contract imposes no obligation on one of the parties it is void for want of mutuality. Vogel v. Pekoc, 157 Ill. 339.

We are of opinion plaintiffs have no reason to complain of the judgment, and it will therefore be affirmed.