RICHARD RAMSEY

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa October 31, 1892.*

CONSTITUTIONAL LAW—*weighing coal before screening—depriving persons of property rights.* The act of 1891, which requires the owners and operators of coal mines, when the miner is paid on the basis of the amount of coal mined and delivered by him, to weigh the coal on pit cars before it is screened, and to pay on such weights, is in violation of section 2 of article 2 of the State constitution, as depriving a class of persons of the liberty and of the property right of making contracts, without due process of law.

APPEAL from the County Court of Grundy county; the Hon. A. R. JORDAN, Judge, presiding.

Mr. GEORGE S. HOUSE, for the appellant:

The act in question is in contravention of the constitution, which provides that no person shall be deprived of life, liberty or property without due process of law. *Godcharles* v. *Wigeman*, 113 Pa. St. 431; *State* v. *Goodwill*, 33 W. Va. 179; *In re Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 id. 377; *People* v. *Gilsen*, 109 id. 389; *Millett* v. *People*, 117 Ill. 294; *Jones* v. *Reynolds*, 2 Texas, 251; *Butchers* v. *Crescent City*, 111 U. S. 757; *Wyenheimer* v. *People*, 13 N. Y. 432; Cooley's Const. Lim. (1st ed.) 352, 353, 391; *Soon* v. *Hing*, 133 U. S. 703; *Minnesota* v. *Barber*, 136 id. 313; *Ex parte Kulbach*, 85 Cal. 274; *Ragio* v. *State*, 86 Tenn. 272; *State* v. *Devine*, 98 N. C. 778; *Mayler* v. *Kansas*, 123 U. S. 623; *Yick Wo* v. *Hopkins*, 118 id. 356.

Mr. S. C. STOUGH, State's Attorney, and Mr. WILLIAM MOONEY, for the People:

Without and beyond constitutional limitations and restrictions, the legislature is as omnipotent as the British Parlia-

ment.    *Mason* v. *Wait*, 4 Scam. 127;  *Hawthorn* v. *People*,
109 Ill. 302.; *People* v. *Salomon*, 51 id. 49.

The only direct prohibition against special or local legisla-
tion is contained in section 22 of article 4 of the constitution.
Under that, the legislature must determine whether a general
law will apply, and its decision is not subject to review by the
courts.    *Owners of Lands* v. *People ex rel.* 113 Ill. 296; *John-
son* v. *Railroad Co.* 23 id. 202; *People* v. *Harper*, 91 id. 357.

As to legislative control of weights and measures by statute
and under the police power, see 18 Am. and Eng. Ency. of
Law, 757; *Patterson* v. *Kentucky*, 97 U. S. 501; *State* v. *Fos-
dick*, 21 La. Ann. 256; *Stokes* v. *New York*, 14 Wend. 87;
*Hawthorn* v. *People*, 109 Ill. 302.

Positive legislation regarding the weighing, measuring and
screening of coal is approved by the courts.  *Coal Co.* v. *State*,
56 W. Va. 802; *City Council* v. *Rogers*, 3 McCord, 495.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This was a criminal prosecution, commenced before a jus-
tice of the peace of Grundy county, against Richard Ramsey,
for a violation of the provisions of the "Act to provide for the
weighing in gross of coal hoisted at mines," approved June
10, 1891.   The complaint, which was sworn to by Thomas
McGuire, set forth, in substance, that on the 13th day of No-
vember, 1891, the Braceville Coal Company was a corporation
engaged in said county in the business of mining coal, and
that the employes and miners of said corporation, being many,
were then and there paid by said corporation upon the basis
of the quantity of coal which each mined and delivered to
said corporation; that said Thomas McGuire was then and
there one of said employes and miners of said corporation,
and was then and there paid by said corporation upon the
basis of the quantity of coal which he mined and delivered
to said corporation; that said Richard Ramsey was then and

there an agent and superintendent of said corporation in the prosecution of said mining business, and that he, said Ramsey, as such agent and superintendent, then and there, unlawfully took from said McGuire portions of coal mined by him as employe and miner as aforesaid, by a process of screening, and without fully accounting for and crediting said portions to said McGuire, he, said McGuire, being the employe and miner from whose output such portions were screened and taken, and that said Ramsey then and there failed and refused and did not weigh in pit cars all coal mined by said McGuire, as employe and miner aforesaid, but dumped all of said coal into screens and chutes, before weighing the same, contrary to the statute in such case made and provided.

On trial before the justice of the peace, the defendant was found guilty and sentenced to pay a fine of $50 and costs. On appeal to the County Court, a trial was had *de novo*, resulting in the conviction of the defendant and the imposition of the same fine as in the court below. To reverse the judgment of the County Court, the defendant now brings the record to this court. The statute for a violation of which said conviction was had, is as follows:

"SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That it shall be unlawful for any owner, agent or operator of any coal mine whose miners are paid upon the basis of the quantity of coal which each shall mine and deliver to said employer, to take any portion of the same by any process of screening, or by any other device, without fully accounting for and crediting the same to the miner from whose output such portion is screened or taken.

"Sec. 2. That all coal shall be weighed in the pit cars before being dumped into screens or chutes, two thousand pounds to the ton. A correct record shall be kept of the weight of each miner's car, which record shall be kept open, at all reasonable times, for the inspection of all miners or

others pecuniarily interested in the product of such mine. The person authorized to weigh the coal and keep such record shall, before entering upon his duties, make and subscribe to an oath before some magistrate or other officer authorized to administer oaths, that he will accurately weigh and carefully keep a true record of coal delivered from mines. This oath shall be kept conspicuously posted at the place of weighing.

"Sec. 3. Any person, owner or agent operating a coal mine in this State who shall fail to comply with the provisions of this act, shall be fined for the first offense not less than twenty-five dollars ($25) nor more than fifty dollars ($50); for the second offense not less than one hundred dollars ($100) nor more than two hundred dollars ($200), and for the third offense be imprisoned in the county jail not less than six months nor more than one year."

It is not disputed that, if this statute is held to be constitutional and valid, the evidence is sufficient to warrant the conviction of the defendant. The validity of said statute is therefore the only question presented for our consideration.

It seems to have been the practice of the Braceville Coal Company, on employing its miners, to require them to enter into written contracts as to the period and terms of their service, their duties and compensation, and that when McGuire, the complaining witness entered the company's service, a contract, in the usual form, was executed by him and the company, under their respective hands and seals. By that contract, McGuire, as party of the second part, agreed to enter the employment of the company, party of the first part, as a miner of coal, to commence November 3, 1891, and continue therein until June 1, 1892, and to abide by, observe and adhere to the rules of the company adopted for the regulation of mining and other employment about its coal mines and property. The contract prescribed with considerable minuteness the duties of McGuire as a miner of coal, and the mode

of their performance, and contained, in respect to his com-
pensation, the following provisions:

"The said party of the first part agrees to pay said party of
the second part for each ton of screened coal mined by him
and delivered on pit cars at the face of the room where the
same is mined, all coal to be weighed after passing over the
screens, the bars of which shall be seven-eighths of an inch
apart, as nearly as possible, providing that any accidental
widening or changing of the width between said screen-bars
shall not be construed to mean or constitute an excuse or
plea for or of a violation or abrogation of this contract.   Said
screens shall not exceed four and one-half feet in width, and
the screen-bars shall not exceed ten feet in length, as follows,
less all deductions, set-offs and counter-claims due at date of
payments, viz:   For mining, seventy-two and one-half cents
per ton, from date to November 1, 1891, and eighty cents per
ton from November 1, 1891, to May 1, 1892, and seventy-two
and one-half cents per ton for month of May, 1892, and the
further sum of fifteen cents per ton for brushing and keeping
his room and roadway in good working order, four feet high
to first parting: *Provided, however*, should the distance to the
first parting exceed seventy-five yards, then in that case to a
point seventy-five yards distant from the face of the coal,
that party of the first part will keep this part of the road the
same height (four feet) to the main road."

The evidence is, that the defendant, as superintendent and
agent of the company, weighed the coal mined by McGuire
after it was screened, as provided in the contract, and paid
him, as stipulated therein, that which was separated from the
coal in screening not being accounted for.

In the recent case of *Frorer* v. *The People*, 141 Ill. 171,
we had occasion to consider another statute passed by the
same Legislature, and involving, in the main, the same con-
stitutional principles as the one now before us, and reached
the conclusion that the statute in question in that case is un-

constitutional and void. That statute made it unlawful for any person, company, corporation or association engaged in any mining or manufacturing business, to engage in, or be interested, either directly or indirectly, in the keeping of a truck-store, or the controlling of any store, shop or scheme for the furnishing of supplies, tools, clothing, provisions or groceries, to his, its or their employes, while engaged in mining or manufacturing. We held that said statute was a prohibition, not only upon the employer engaged in mining or manufacturing, but also upon his employes, and took from both the right and liberty belonging to all other members of the community to enter into such contracts, not contrary to public policy, as they may see fit; that the Legislature had no power to deprive one class of persons of privileges allowed to other persons under like conditions; that the privilege of contracting is both a liberty and a property right, protected by that provision of the Constitution which guarantees that no person shall be deprived of his liberty or property without due process of law, and that if one person is denied the right to contract and acquire property in the manner which he has hitherto enjoyed under the law, and which is still allowed to other members of the community, he is deprived of both liberty and property, to the extent that he is thus deprived of the right of contract.

We are of the opinion that the same rule, in substance, laid down in the Frorer case applies here, and we need therefore do little more than refer to what is said in the opinion in that case. The statute now before us, in like manner with the one under consideration there, attempts to take from both employer and employe engaged in the mining business, the right and the power of fixing by contract the amount of wages the employe is to receive, and the mode in which such wages are to be ascertained. The statute makes it imperative, where the miner is paid on the basis of the amount of coal mined, whatever may be the wishes or interests of the parties, that

25—142 ILL.

the coal shall be weighed on the pit cars before being screened, and that the compensation shall be computed upon the weight of the unscreened coal.

In all other kinds of business, involving the employment of labor, the employer and employe are left free to fix by contract the amount of wages to be paid and the mode in which such wages shall be ascertained and computed. This is justly regarded as a very important right, vitally affecting the interests of both parties. To the extent to which it is abridged, a property right is taken away. There is nothing in the business of coal mining which renders either the employer or employe less capable of contracting in respect to wages than in any of the other numerous branches of business in which laborers are employed under analogous conditions. There is no difference, at least in kind, so far as this matter is concerned, between coal mining, on the one hand, and other varieties of mining, quarrying stone, grading and constructing railroads, and their operation when constructed, manufacturing in all its departments, the construction of buildings, agriculture, commerce, domestic service, and an almost infinite variety of other avocations requiring the employment of laborers, on the other hand. Upon what principle, then, can those engaged in coal mining be singled out and subjected to restrictions of their power to contract as to wages, while those engaged in all these other classes of business are left entirely free to contract as they see fit? We think the attempt of the Legislature to impose such restrictions is clearly repugnant to the constitutional limitation above referred to and therefore void.

The conclusion to which we have arrived is entirely in harmony with, if not directly supported by, the case of *Millett* v. *The People,* 117 Ill. 294. The statute under consideration in that case required the owner of every coal mine to furnish and place upon the railroad track adjacent to such mine, a

track scale, and it was provided that all coal produced should be weighed on such scales, and a correct record kept of the same, to be subject to the inspection of the miner, operator, carrier, land owner, adjacent land owner, members of the Bureau of Labor Statistics, mine inspectors, and others interested. Said statute provided for the punishment, by fine or imprisonment, of any owner or agent operating a mine for a failure to comply with those requirements, and declared all contracts for mining of coal in which the weighing of coal as thus provided for should be dispensed with, to be null and void. The defendant being indicted for a violation of said statute, set up by way of defense, as it would seem, that he had contracted with his miners for fixing their compensation by means other than weighing the coal mined. The trial court having instructed the jury that such contract was void, the judgment of conviction was reversed, this court holding that the provision of said statute declaring such contract void was repugnant to the article of the Constitution which provides that no person shall be deprived of life, liberty or property without due process of law.

The statute under which the conviction in this case was had being void, the judgment will be reversed, and the cause will be remanded to the County Court with directions to discharge the defendant.*

*Judgment reversed.*

---

*FROBER ET AL. v. THE PEOPLE — Springfield, November 2, 1892, — is governed by the foregoing case of *Ramsey* v. *The People*, and the judgment therein is reversed and the cause remanded.