# THE BRACEVILLE COAL COMPANY

### *v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa October 26, 1893.*

1. CONSTITUTIONAL LAW—*act of 1891, requiring the weekly payment of wages.* The "Act to provide for the weekly payment of wages by corporations," approved April 23, 1891, and imposing a penalty for its violation, being applicable only to certain corporations therein named, and not operating upon all corporations for pecuniary profit and individuals, is unconstitutional, as depriving the corporations affected thereby of the right of liberty and property without "due process of law."

2. SAME—*"due process of law" defined.* The words "due process of law," in section 2 of article 2 of the constitution, which secures all persons against the deprivation of life, liberty or property except by due process of law, are synonymous with "the law of the land;" and this means general public law, binding upon all the members of the community under all circumstances, and not partial or private laws, affecting the rights of private individuals or classes of corporations.

3. SAME—*liberty of the citizens protected.* There can be no liberty protected by government that is not regulated by such laws as will preserve the right of each citizen to pursue his own advancement and happiness in his own way, subject only to the restraints necessary to secure the same right to all others. The fundamental principle upon which such liberty is based is equality under the law of the land.

4. Liberty, as that term is used in the constitution, means not only freedom from servitude, but embraces the right of every man to be free in the use of his powers and faculties, and to adopt and pursue such avocation or calling as he may choose, subject only to the restraints necessary to secure the common welfare.

5. SAME—*the right of property secured.* The right of property secured by the constitution is the right, not only to possess and enjoy it, but also to acquire it in any lawful mode, or by following any lawful industrial pursuit which the citizen, in the exercise of the liberty guaranteed, may choose to adopt. The property which a man has in his own labor is the common heritage of all.

6. And as an incident to the right to acquire other property, the liberty to enter into contracts by which labor may be employed, in such way as the laborer shall deem most beneficial, and of others to employ such labor, is necessarily included in the constitutional guaranty.

7. SAME—*of the constitutional right to contract.* The privilege of contracting is both a liberty and a property right, and if A is denied the right to contract and acquire property in the manner which he has hitherto enjoyed under the law, and which B, C & D are still allowed, it is clear that A is deprived of both liberty and property to the extent that he is thus denied the right to contract.

8. The people, in their representative capacity, may, by general law, render that unlawful, in many cases, which before was lawful. But laws depriving particular persons or classes of persons of rights enjoyed by the community at large, to be valid, must be based upon some existing distinction or reason not applicable to others.

9. CONSTITUTION—*clause relating to corporations.* The manifest intention of section 1 of article 11 is to require not only the creation of corporations, but amendments to charters of those existing, to be made by general laws applicable alike to all occupying like circumstances and existing under the same conditions. It follows that special acts, applying to particular corporations, only, and not to the general body of corporations, created under the act, will fall under the prohibition of this section.

10. CORPORATIONS—*restriction on power to contract.* As the general Incorporation law gives the right to corporations to contract about the business for which they are organized, a restriction of such right to contract is necessarily an amendment or change of their corporate powers and functions,—of their charters.

11. If a restriction upon the right of certain corporations to contract is held to fall within the power reserved in section 9 of the act relating to corporations, it must, in view of the constitutional provision (sec. 1 of art. 11) be construed as reserving the power to prescribe such regulations and provisions as the legislature may deem advisable, by general law, applicable to all corporations of the same class.

APPEAL from the County Court of Grundy county; the Hon. A. R. GORDON, Judge, presiding.

The appellant was tried before a justice of the peace, and found guilty of violating an act of the legislature entitled "An act to provide for the weekly payment of wages by corporations," approved April 23, 1891, and the penalty of fifty dollars imposed, for which, and costs, judgment was rendered accordingly. The case was taken by appeal to the county court of Grundy county, where a trial was had by the court, a jury having been waived, and appellant again found guilty.

and the penalty of fifty dollars imposed, and judgment entered for that amount and costs, and the case is brought here by further appeal.

The act of the legislature above referred to provides: "That every manufacturing, mining, quarrying, lumbering, mercantile, street, electric and elevated railway, steamboat, telegraph, telephone and municipal corporation, and every incorporated express company and water company, shall pay, weekly, each and every employe engaged in its business, the wages earned by such employe to within six days of the date of such payment: *Provided, however*, that if at any time of payment any employe shall be absent from his regular place of labor, he shall be entitled to said payment at any time thereafter, upon demand." And after providing a penalty of not less than ten dollars nor more than fifty dollars for each violation; that such action be commenced within thirty days after the violation; notice to the corporation that an action will be brought, and defenses that may not be set up, etc., proceeds: "No assignment of future wages, payable weekly under the provisions of this act, shall be valid if made to the corporation from whom such wages are to become due, or to any person on behalf of such corporation, or if made, or procured to be made, to any person for the purpose of relieving such corporation from the obligations to pay weekly under the provisions of this act. Nor shall any of said corporations require any agreement from an employe to accept wages at other periods than as provided in section 1 of this act, as a condition of employment."

Appellant became a corporation under the general Incorporation law, in force July 1, 1872, and for several years past has been engaged in the business of coal mining, with its principal office at Braceville, Grundy county, this State. A certain contract is provided by appellant, which all persons desiring employment in its service are required to sign as a condition precedent to such employment. The complaining witness, Thomas McGuire, in November, 1891, applied to the super-

intendent of appellant's mines for work, and was required to sign one of its contracts, which was done in duplicate, each party retaining a copy. Certain rules and regulations of the company on the back of its contracts are, by the terms of each contract, made a part of the same. The contract of witness McGuire, after stipulating, among other things, the wages to be paid, etc., provides: "All payments hereunder to be made on regular pay-day, and in compliance with the rules and regulations above named, and pay-day is hereby fixed for and on the first Saturday after the 10th of each month, when and at which time all wages or moneys that may have been earned during and in the calendar month next prior to such pay-day shall be paid, less all moneys owing said party of the first part, on any account whatever." By the seventh rule printed on the back of said contract, and made part thereof, it is provided: "Every employe will be paid once a month, at regular pay-day, all wages or moneys he may have earned during and in the calendar month next prior to such pay-day, after deducting any indebtedness which such employe may owe to the company, or which the company, with the consent of such employe, may have assumed to pay to any other person." McGuire entered upon the employment, under the contract, November 3, 1891, and quit November 13, 1891, and demanded his wages. The company refused to pay him before the next pay-day, when he gave the notice under the statute and caused this suit to be brought.

Mr. GEORGE S. HOUSE, for the appellant:

As to the constitutionality of the act, see *People* v. *Gillson*, 109 N. Y. 389; *Slaughter House cases*, 16 Wall. 36; *Matter of Jacobs*, 98 N. Y. 98; *Bertholf* v. *O'Reilley*, 74 id. 509; *People* v. *Marx*, 99 id. 377; *Godcharles* v. *Wigeman*, 113 Pa. St. 431; *State* v. *Goodwill*, 33 W. Va. 179; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Butcher Union Co.* v. *Crescent City*, 111 id. 746; *People* v. *Otis*, 90 N. Y. 48; *Millett* v. *People*, 117 Ill. 294; *Perry* v. *Commonwealth*, 155 Mass. 117.

Mr. S. C. STOUGH, and Mr. WILLIAM MOONEY, for the People:

The right to amend the charter of corporations is reserved in section 9 of the Corporation act. *Miller* v. *State,* 15 Wall. 478; *Ferguson* v. *Bank,* 3 Sneed, 609; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 374.

Amendment of charter is not in violation of the Federal constitution. 3 Am. and Eng. Ency. of Law, 745, note 1.

For matters concerning which the State legislatures of different States have prescribed, and the courts have approved, the exercise of the police powers, see *Powell* v. *Pennsylvania,* 114 Pa. St. 265; *Powell* v. *Commonwealth,* 127 U. S. 679; *Shaffer* v. *Mining Co.* 55 Md. 74; *Munn* v. *Illinois,* 69 Ill. 80; 94 U. S. 113.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The principles that must control the decision of this case were announced in *Frorer et al.* v. *The People,* 141 Ill. 171. Unless we are prepared to recede from the doctrine of that case, and the subsequent case of *Ramsey* v. *The People,* 142 Ill. 380, the act under consideration must be likewise held unconstitutional and void.

Section 2 of article 2 of the constitution of this State guarantees that no person shall be deprived of life, liberty or property without due process of law. We said in the *Frorer case,* the words "due process of law" "are to be held synonymous with 'the law of the land,'" and quoting from *Millett* v. *The People,* 117 Ill. 294, said: "And this means general public law, binding upon all the members of the community under all circumstances, and not partial or private laws, affecting the rights of private individuals or classes of individuals." There can be no liberty, protected by government, that is not regulated by such laws as will preserve the right of each citizen to pursue his own advancement and happiness in his own way, subject, only, to the restraints necessary to secure the same right to all others. The fundamental principle upon

which liberty is based, in free and enlightened government, is equality under the law of the land.    It has accordingly been everywhere held, that liberty, as that term is used in the constitution, means not only freedom of the citizen from servitude and restraint, but is deemed to embrace the right of every man to be free in the use of his powers and faculties, and to adopt and pursue such avocation or calling as he may choose, subject only to the restraints necessary to secure the common welfare.    *Frorer* v. *The People, supra; Perry* v. *Commonwealth,* 155 Mass. 117; *People* v. *Gilson,* 109 N. Y. 389; *Live Stock Ass.* v. *Crescent City,* 1 Abb. 388; *Slaughter House cases,* 16 Wall. 36; *Goodcharles* v. *Wigeman,* 113 Pa. St. 431; *State* v. *Goodwill,* 33 W. Va. 179.

Property, in its broader sense, is not the physical thing which may be the subject of ownership, but is the right of dominion, possession and power of disposition which may be acquired over it; and the right of property, preserved by the constitution, is the right not only to possess and enjoy it, but also to acquire it in any lawful mode, or by following any lawful industrial pursuit which the citizen, in the exercise of the liberty guaranteed, may choose to adopt.    Labor is the primary foundation of all wealth.    The property which each one has in his own labor is the common heritage, and, as an incident to the right to acquire other property, the liberty to enter into contracts by which labor may be employed in such way as the laborer shall deem most beneficial, and of others to employ such labor, is necessarily included in the constitutional guaranty.    In the *Frorer case* we said: "The privilege of contracting is both a liberty and a property right, and if A is denied the right to contract and acquire property in the manner which he has hitherto enjoyed under the law, and which B, C and D are still allowed by the law to enjoy, it is clear that he is deprived of both liberty and property to the extent that he is thus denied the right to contract," and quoted with approval: "The man or the class forbidden the

acquisition or enjoyment of property in the manner permitted the community at large, would be deprived of liberty in particulars of primary importance to his or their pursuit of happiness." Cooley's Const. Lim. 393.

It is undoubtedly true that the people, in their representative capacity, may, by general law, render that unlawful, in many cases, which had hitherto been lawful. But laws depriving particular persons or classes of persons of rights enjoyed by the community at large, to be valid, must be based upon some existing distinction or reason not applicable to others not included within its provisions. (Cooley's Const. Lim. 391.) And it is only when such distinctions exist that differentiate, in important particulars, persons or classes of persons from the body of the people, that laws having operation only upon such particular persons or classes of persons have been held to be valid enactments. In the *Millett case* we held that it was not competent, under the constitution, for the legislature to single out operators of coal mines, and impose restrictions, in making contracts for the employment of labor, which were not required to be borne by other employers. And in the *Frorer case*, a law singling out persons, corporations or associations engaged in mining and manufacturing, and depriving them of the right to contract as persons, corporations and associations engaged in other business or vocation might lawfully do, was in violation of the constitution, and void. So in *Ramsey* v. *The People*, 142 Ill. 380, "An act to provide for the weighing in gross of coal hoisted from mines," approved June 10, 1891, was held unconstitutional and void for the same reason.

The act under consideration applies not to all corporations existing within the State, or to all that have been or may be organized for pecuniary profit under the general incorporation laws of the State. There is no attempt to make a distinction between corporations and individuals who may employ labor. The slightest consideration of the act will demonstrate that

many corporations that may be and are organized and doing
business under the laws are not included within the designated
corporations. No reason can be found that would require
weekly payments to the employes of an electric railway that
would not require like payment by an electric light or gas
company; to a corporation engaged in quarrying or lumbering
that would not be equally applicable to a corporation engaged
in erecting, repairing or removing buildings or other struct-
ures; to mining that would not exist in respect of corporations
engaged in making excavations and embankments for roads,
canals, or other public or private improvement of like char-
acter; that will apply to a street or elevated railway that will
not make it equally important in other modes of transportation
of freight and passengers. The public records of the State
will show, and it is a matter of common knowledge, that very
many corporations have been organized and are doing busi-
ness in the State, which necessarily employ large numbers of
men, that are not included within the act under consideration.

The restriction of the right to contract affects not only the
corporation, and restricts its right to contract, but that of
the employe as well. We need not repeat the argument of the
*Frorer case* upon this point. An illustration of the manner in
which it affects the employe, out of many that might be given,
may be found in the conditions arising from the late unsettled
financial affairs of the country. It is a matter of common
knowledge that large numbers of manufactories were shut
down because of the stringency in the money market. Em-
ployers of labor were unable to continue production, for the
reason that no sale could be found for the product. It was
suggested, in the interest of employes and employers as well
as in the public interest, that employes consent to accept only
so much of their wages as was actually necessary to their
sustenance, reserving payment of the balance until business
should revive, and thus enable the factories and workshops to
be open and operated with less present expenditure of money.

Public economists and leaders in the interests of labor suggested and advised this course. In this State and under this law no such contract could be made. The employe who sought to work for one of the corporations enumerated in the act would find himself incapable of contracting as all other laborers in the State might do. The corporations would be prohibited from entering into such a contract, and if they did so, the contract would be voidable at the will of the employe, and the employer subject to a penalty for making it. The employe would, therefore, be restricted from making such a contract as would insure to him support during the unsettled condition of affairs, and the residue of his wages when the product of his labor could be sold. The employes would, by the act, be practically under guardianship; their contracts voidable, as if they were minors; their right to freely contract for and to receive the benefit of their labor, as others might do, denied them.

But treating the restrictions as affecting the corporation, only, it is insisted that the reservation of authority by the General Assembly, in section 9 of the general Incorporation act, (Rev. Stat. chap. 32,) authorized the passage of the act in question. That section provides: "The General Assembly shall, at all times, have power to prescribe such regulations and provisions as it may deem advisable, which regulations and provisions shall be binding on any and all corporations formed under this act." It is said this section entered into and formed a part of the contract under which the grant of the corporate franchise was conferred upon appellant company, it having been organized under the general law.

It was expressly held that the reservation of the right to alter, amend or repeal the charter entered into and formed a part of the contract between the State and the corporation chartered under the constitution of 1848, and that the power reserved might be constitutionally exercised, (*Butler* v. *Walker*, 80 Ill. 345,) and undoubtedly the same construction should be placed upon the reservation of power in the section quoted.

But by section 1 of article 11 of the constitution it is provided: "No corporation shall be created by special laws, or its charter extended, changed or amended, * * * but the General Assembly shall provide, by general laws, for the organization of all corporations hereafter to be created." The manifest intention of this provision of the constitution was to require not only the creation of corporations, but amendments to charters of those existing, to be made by general laws, applicable alike to all occupying like circumstances and existing under the same conditions; and it necessarily follows that special acts, applying to particular corporations only, and not to the general body of corporations created under the act, would fall within the prohibition of this section.

By the general Incorporation law appellant company was granted the right to contract as a corporation in and about the business for which it was organized. A restriction of its right to thus contract is necessarily an amendment or change of its corporate powers and functions,—of its charter. If, therefore, the restriction is held to fall within the power reserved in section 9 of the act, it must, in view of the constitutional provision, be construed as reserving the power to prescribe such regulations and provisions as the legislature may deem advisable, by general law. The act under consideration, not being a general law, is, therefore, not a warranted exercise of power.

We need not extend this opinion by further discussion. The right to contract necessarily includes the right to fix the price at which labor will be performed and the mode and time of payment. Each is an essential element of the right to contract, and whosoever is restricted in either as the same is enjoyed by the community at large, is deprived of liberty and property.

The enactment being unconstitutional, there is no law authorizing the judgment of the county court, and it will accordingly be reversed.

*Judgment reversed.*