Reprinted on account of Er  r
[COPYRIGHT, 1898, BY CARL G. JAHN.
VOL. V.—14

(Cuyahoga Co. Court of Common Pleas.)
June 22, 1897.

THE STATE OF OHIO, on the relation of M. F. BRAMLEY v. MINOR G. NORTON, Director of Law and Corporation Counsel of The City of CLEVELAND.

———

An ordinance of the city of Cleveland providing "that all specifications prepared by the head of any of the departments of the executive branch of the municipality of Cleveland, for any public work or improvement and upon which, under proper advertisement, bids shall be received for the performance of such work or the making of any such improvement, such specifications shall have inserted therein, a clause, providing that any and all common labor performed on such work, or the making of any such improvement as may be contemplated, and in the pursuance of any such specifications, shall receive not less than $1.50 per day, and that the hours of labor of such common labor shall not exceed eight hours per day," is in conflict with secs. 1 and 19 of the Bill of Rights, Ohio constitution, and with sec. 1, of the 14th amendment, U. S. constitution; also in conflict with paragraph 6, sec. 76, of the Federal Plan Law (88 O. L., 304), requiring that none but the lowest and best responsible bid shall be accepted, and therefore void.

Mandamus will not lie to compel a public officer, clothed with discretionary or quasi judicial power, to comply with the provisions of an ordinance wholly unauthorized by law, and consequently void, vicious and unconstitutional.

———

Demurrer to defendant's answer to plaintiff's petition for a writ of mandamus to compel the defendant, Minor G. Norton, Director of Law and Corporation Counsel of the city of Cleveland, to approve the legal form and correctness of a contract between the plaintiff. M. F. Bramley. and the city, for the doing of paving work therein.

### Statement of Facts.

The facts fully appear in the pleadings. Plaintiff alleges in his petition that the defendant, Minor G. Norton, is the duly appointed, qualified and acting director of law and corporation counsel of the city of Cleveland, which is a municipal corporation of the second grade of the first class, duly organized under the laws of the state of Ohio.

By resolution of the city council, duly adopted on March 23rd, 1896, on the recommendation of the board of control, it was deemed and declared necessary, and the said city council declared its intention to improve Vine street, in the city of Cleveland, from Scovill avenue to Wood-

land avenue, by grading, draining, setting curbs, paving with paving brick, and improving to the established grade in accordance with the plans and profiles on file in the office of the chief enigneer, and with assessment report No. 798.

Said resolution was duly published as required by law, and notice of the passing of the same was duly served upon the owners of the property abutting on said improvement.

On June 22, 1896, an ordinance to grade, drain, curb, pave and improve Vine street, and to prepare an estimated assessment therefor, was duly passed by the council of the city of Cleveland, and in accordance therewith due notice was given in all respects as required by law, and no objections were filed thereto, and said assessment was duly confirmed by said city council.

On September 8, 1896, an ordinance to levy and assess a special tax to pay the cost and expense of grading, draining, curbing, paving with paving brick, and improving Vine street, was duly passed by said city council.

On December 21st, 1896, the city auditor reported that $5,730.00 was realized by said ordinance providing for the paving of Vine street from Woodland avenue to Scovill avenue, and on recommendation of the auditor, corporation counsel and committee on finance, said report was unanimously adopted.

On January 11, 1897, by resolution of the city council, the director of public works was authorized to advertise for and receive sealed proposals for making said improvement, and in accordance with said resolution, proposals for making the same were duly advertised for, as provided by law.

On February 15, 1897, by resolution of the city council, duly adopted on recommendation of the board of control, all bids received on February 10, 1897, in accordance with said advertisement were rejected. and the director of public work was duly authorized to re-advertise for the same.

In accordance with said resolution, proposals for doing said work were duly advertised for as required by law, and it was required that each proposal contain the full name of the party or parties making the same, and all persons interested therein. and be accompanied by certified check for $500.00, the said check to be enclosed with the proposal, on a solvent bank in the city, as security that if the proposal be accepted, a contract would be entered into; and it was further provided. that no proposal would be entertained unless made on the blank furnished by the chief engineer, and delivered at the office of the secretary of the board of control, No. 105, City Hall, previous to 12 o'clock M., on the day specified.

Your relator duly submitted his bid in accordance with the requirements contained in such advertisement, and according to law. Said bids were duly received and opened, and he was the lowest and best responsible bidder, his bid being in the sum of $4,431.37 for doing said work in accordance with the plans and specifications in the office of the chief engineer of the city of Cleveland.

On April 19, 1897, by resolution of the city council of the city of Cleveland, duly adopted on the recommendation of the board of control, the director of public works was authorized to enter into a contract with relator in accordance with his bid for paving Vine street, subject to the approval of the council and the board of control.

As authorized by said resolution above referred to, the director of public works, on the 24th day of May, 1897, duly entered into a contract with relator for improving Vine street, subject to the approval of the city council and the board of control. A copy of said contract is attached to relator's petition, marked "Exhibit A". and made a part hereof, containing the following stipulation:

"In pursuance of ordinance 14155, any and all common labor performed on such work, or the making of any such improvement as may be contemplated, and in pursuance of these specifications, shall receive not less than one and one-half dollars ($1.50) per day, and that the hours of labor of such common labor, shall not exceed eight (8) hours per day."

The chief engineer of the city of Cleveland duly certified the approximate cost of said work. including the inspection as required by law.

The director of accounts and city auditor has duly certified that the money required for this contract is in the treasury to the credit of the proper fund, and not appro priated for any other purpose.

On June 1st, 1897, the approval of said contract was recommended by the board of control, and the action of said board duly certified thereto by its secretary on June 1st, 1897.

It is the duty of the defendant, Miner G. Norton, director of law of the city of Cleveland and corporation counsel, to approve the legal form and correctness of said contract, and the bond given for the faithful performance of the same, and said contract cannot take effect until he has endorsed his approval on said contract

On the 1st day of June, 1897, relator requested of said Miner Norton, director of law and corporation counsel of the city of Cleveland, that he endorse on said contract his approval of the legal form and correctness of said contract and bond, but that said defendant then and there refused and still refuses to sign said contract, and has returned the same to the city council without his approval.

Said contract is in legal form, and the said contract and bond are correct, and relator has no remedy in the ordinary course of law in the premises.

Wherefore, relator prays that a writ of

mandamus issue commanding said defendant, Miner G. Norton, director of law and corporation counsel, of the city of Cleveland, to approve the legal form and correctness of said contract and bond, and for such other relief as may be just and proper.

For his answer to the petition, the defendant, Minor G. Norton, denies that the contract referred to in said petition is in legal form, and that the contract and bond are correct, because the conditions and provisions contained in said contract and the specifications under which bids were solicited and received, were such as to mislead bidders and prevent fair and free competition in bidding, and especially were such as to prevent any competiton as to the item of labor, and that said contract and said specifications were and are illegal and void; and the defendant further says: "That a large proportion of the elements and items which were and are necessary for the making of the improvement referred to in relator's petition consist in and are composed of labor; that in the prosecution and completion of said improvement, it would have been and was necessary to employ a great number of common laborers and that in submitting bids for the making of said improvement, the item of common labor entered into and comprised a material item in all of such bids; that said specification and the advertisement calling for such proposals were such as to apprise prospective bidders that the item of common labor was a material item in the bids therein, called for the making of said improvement; and that on the 25th day of January, 1897, the council of the city of Cleveland, passed an ordinance, to-wit:—known as ordinance No. 14155, entitled "an ordinace to Provide for the Hours of Labor and Compensation of Common Labor upon Public Work or Public improvements let by Contract;" of which the following is a copy:

" 'Section 7.—Be it ordained by the council of the city of Cleveland, That any and all specifications hereafter prepared by the head of any of the departments of the executive branch of the municipality of Cleveland, for any public work or improvement and upon which, under proper advertisement, bids shall be received for the performance of such work, or the making of any such improvement, such specifications shall have inserted therein a clause, providing that any and all common labor performed on such work or the making of any such improvement as may be contemplated, and in pursuance of any such specifications, shall receive not less than $1.50 per day, and that the hours of labor of such common labor shall not exceed eight hours per day.

" 'Section 2.—Any person or persons, company, or corporation who shall hereafter bid upon any public work and shall fail to pay common labor thereon, the amount per day fixed by section 1, of this ordinance, or shall employ such labor at such rate of wages in excess of eight hours per day, shall be deemed to be a violation of the terms and conditions of the contract entered into by any such person or persons, company, or corporation, and the same shall be declared forfeited by the head of any such department making such contract when such forfeiture shall be approved by the adoption of a resolution of the city council.

" 'Section 3.—It shall be the duty of the head of any such department of the city government, to cause any and all specifications and proposals received thereunder, prepared or made for any public work or improvement, to be attached to and made a part of the contract entered into for any such public work or improvement.

" 'Section 4.—This ordinance shall take effect and be in force from and after its passage and legal publication.' "

"Defendant further avers and says: That said ordinance was thereupon duly published as required by law, and that it has never been repealed; that pursuant to the provisions of said ordinance, the specifications referred to in said relator's petition, and under which bids were solicited and received, contained a provision and condition of which the following is a copy:

" 'In pursuance of ordinance 14155, any and all common labor performed on such work or the making of any such improvement as may be contemplated, and in pursuance of these specifications, shall receive not less than one and one-half dollars ($1.50) per day, and that the hours of labor of such common labor shall not exceed eight (8) hours per day.'

"That said provision was embodied in and made a part of said specifications, and the same was, and is embodied in and made a part of the contract referred to in relator's petition.

"Defendant further says, that at all times mentioned in relator's petition the city of Cleveland was a city of the second grade of the first class, and governed and subject to all provisions of the statutes of the state of Ohio, applicable to such cities, and especially section 76 of the Federal Plan Act, so called, passed March 16, 1891, (88 O. L., p. 105), as amended April 4, 1894, and 1896; and that said city and the city council thereof, possessed such powers and such only as were and are expressly granted by the provisions of said statutes pertaining to such cities and said Federal Plan Act, so-called.

"Defendant further says, that the estimated cost of the improvement referred to in said relator's petition exceeded the sum of $5,000.00, and that the various proposals which were submitted in pursuance of said advertisement and specifications, were based upon and submitted with a view of carrying out the provisions and conditions of the ordinance hereinbefore referred to; and that by reason of the specifications containing the provisions and conditions above referred to, the city of Cleveland and its tax payers, and especially that portion of its tax payers affected by the assessment levied,

or to be levied to pay the costs and expenses of said improvement, were deprived of the benefit and right to have said contract let to the lowest and best responsible bidder, after free, fair and competitive bidding.

"Defendant further says, that the ordinance above referred to, was and is unconstitutional, illegal and void; that the portion thereof which was embodied in and made a part of said specifications and contract, as aforesaid, was and is · unconstitutional, illegal and void; that the council of said city exceeded its powers and privileges in passing said ordinance; that neither the city council or any other officer, agent, or board of said city had, or has any right, warrant or authority to make said ordinance, or any part thereof, a part of said specifications or of said contract, or of any contract whatever, and that by reason thereof, said contract is not correct in form; is not legal, but that said contract and said specifications are by reason of the premises informal, illegal and void.

"Defendant further says, that said contract was submitted to him for his approval or disapproval, as provided by law, and he refused to approve but did not disapprove the same, and, now having fully answered, defendant prays to be dismissed with his costs."

The relator demurrs to the answer: "on the ground that it does not state facts sufficient to constitute a defense."

### OPINION.

DELLENBAUGH, J.

The constitutionality of the ordinance, entitled "An Ordinance to Provide for the Hours of Labor and Compensation of Common Labor upon Public Work or Public Improvements let by contract", is called in question by the defendant in the case at bar. This ordinance expressly provides: "That all specifications prepared by the head of any of the departments of the executive branch of the municipality of Cleveland for any public work or improvement and upon which, under proper advertisement, bids shall be received for the performance of such work or the making of any such improvement, such specifications shall have inserted therein, a clause, providing that any and all common labor performed on such work, or the making of any such improvement as may be contemplated, and in the pursuance of any such specifications, shall receive not less than $1.50 per day, and that the hours of labor of such common labor shall not exceed eight hours per day."

It is a self-evident fact, that the object of the ordinance is to make it unlawful for any common laborer to receive a less sum for his labor than $1.50 per day, or require him to work for such day's pay more than eight hours. In this respect does the ordinance attempt to limit the right of freedom of contract, or conflict with the statutory provisions, that all contracts for municipal work shall be awarded to the lowest responsible bidder? In other words, is it constitutional? Manifestly, the constitutionality of the ordinance assailed in this case must be determined solely by reference to the limitations which the constitution and the statutory law of Ohio may impose. The constitutionality of ordinances must be determined by exactly and precisely the same rules as statutes.

"No court ought to declare a statute unconstitutional and void," says the learned Judge Coley, "solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown such injustice is prohibited, or such rights are guaranteed by the constitution. The judiciary and the legislative are co-ordinate departments of the government, neither of which has a right to invade the province of the other."

Cooley Const. Lim. (6 Ed.), p. 157, 200, 203.

In passing upon the constitutionality of the ordinance assailed and complained of in the case at bar, the only question really presented for the court to determine, is purely one of power; that is to say, of the city council to enact it, and not a question, in any imaginable degree of sympathy, expediency, justice or wisdom.

Applying the foregoing test, is the ordinance under consideration constitutional?

The first section of the Bill of Rights provides, that: "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety." And by the 19th section, it is provided, that: "Private property shall be held inviolate, * * *." Section 1, of the 14th amendment of the constitution of the United States, provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

No one can dispute the fact, that the right to acquire and possess property necessarily includes the right to contract, because it is the way it is ordinarily acquired; and furthermore, the only way a person can rightly become the possessor of property by his own honest toil and labor.

Manifestly, of all the rights of persons, it is the most sacred and most essential to the happiness of all mankind. We do not believe that, in good conscience, the right to make any lawful contract can be limited or controlled by legislation determined by no rule or principle, that is, purely arbitrary legislation, and therefore absolutely defenseless; because if it could, the right of freedom of contract would cease to live, and would become a mere plaything, and a license revocable at the will, whim or cap-

rice of the law-making power; and thereupon, the government would become a despotism, both in theory and in fact.

Despotic power of this sort cannot live; for if it could, it would be destructive of the sacred right to enjoy and defend life and liberty, to acquire, possess and protect property, and to seek and obtain happiness and safety, solemnly declared to be inalienable by the Bill of Rights of the state of Ohio.

Now, it is apparent, that when the subject of contract is purely of a private nature, and not affected by any public interest or duty to society, to person or government, and the parties are capable of contracting, there is no condition existing, upon which the city council can interfere for the purpose of either forbidding the making of a contract, or controlling its terms and conditions.

What, if anything, have the higher courts said concerning the validity of a statute or ordinance, declaring how many hours shall constitute a day's work? In the Wheeling Bridge case, 8 Ohio C. C. Rep., 659, the circuit court of Belmont county held that portion of the act of April 15, 1892, (89 O. L., 311), which provides "that ten hours shall constitute a day's work, and that the employes therein named, shall be paid for every hour in excess of ten, which they shall be required or permitted to work, in addition to their per diem," is in conflict with sections 1 and 19 of art. 1, of the constitution of Ohio, and sec. 1 of art. 14, of the amendments to the constitution of the United States, and is void.

In the Wheeling Bridge case, supra, the opinion of the court was delivered by Judge Laubie, who says, at page 665: "The liberty of making contracts is absolutely essential to the acquisition, possession and protection of property. 25 Am. S. R., note 881."

The doctrine is generally recognized and enforced, that every person living under the protection of the general government has the right to follow such occupation or industrial pursuit as to him seems fit, provided it is not injurious to the morals, health, safety or welfare of the public; and such persons generally are entitled to the equal protection of the laws in respect to person and property; and, as incident thereto, the right to employ labor, make contracts in regard thereto, upon such terms as may be agreed upon by the parties, and to enforce such contracts when made.

The supreme court of West Virginia, in State v. Goodwill, 10 S. E., 285, 33 W. Va., 179, considered the constitutionality of a statute of that state which declared, "that it shall not be lawful for any person, firm, company, corporation or association, engaged in mining coal , * * * to issue, for the payment of labor, any order or other paper notes whatsoever, unless the same purports to be redeemable for its face value in lawful money of the United States, bearing interest at a legal rate, made payable to the employe or bearer, and redeemable

within a period of thirty days by the person * * * * issuing the same."

The court held that this statute was void and unconstitutional, and said, at page 183:

"The property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of the poor man lies in the strength and dexterity of his own hands; and to hinder him from employing these in what manner he may think proper, without injury to his neighbor, is a plain violation of this most sacred property. It is equally an encroachment both upon the just liberty and rights of the workman and his employer, or those who might be disposed to employ him, for the legislature to interfere with the freedom of contract between them; as such interference hinders the one from working at what he thinks proper, and at the same time prevents the other from employing whom he chooses. A person living under the protection of this government has the right to adopt and follow any industrial pursuit, not injurious to the community, which he may see fit. And, as incident to this, is the right to labor or employ labor; make contracts in respect thereto, upon such terms as may be agreed upon by the parties; to enforce all lawful contracts; to sue, and give evidence; and to inherit, purchase, lease, sell, and convey property of every kind. The enjoyment or deprivation of these rights are privileges constituting the essential distinction between freedom and slavery; between liberty and oppression."

Acts similar to the statute considered in State v. Goodwill, supra, were declared by courts of last resort to be unconstitutional in State v. Loomis, 115 Mo., 307, 22 S. W., 350; Ramsey v. People, 142 Ill., 380; 32 N. E., 364; Low v. Printing Co., (Neb.), 59 N. W., 362; Ex parte Kuback, (Cal.), 24 Pac. Rep., 737; Harding v. People (Ill.), 43 N. E., 624; and cases cited; State v. Brown, (R. I.), 25 Atl. Rep., 246; Com. v. Perry, 155 Mass., 177.

In Commonwealth v. Perry, 155 Mass., 177, 28 N. E., 1126, the statute under consideration, amongst other things, provided that:—"No employer shall impose a fine upon, or withhold the wages or any part of the wages of, an employe engaged at weaving, for imperfections that may arise during the process of weaving." The court held, that the statute was void and unconstitutional; and in so doing, said: at pages 121 122: "Article 1 of the declaration of rights in the constitution of Massachusetts, enumerates among the natural, inalienable rights of men the right 'of acquiring, possessing and protecting property.' Art. 1, sec. 10, of the constitution of the United States, provides, among other things, that no state shall pass any law impairing the obligation of contracts. The right to acquire, possess and protect property includes the right to make reasonable contracts, which shall be under the protection of the law. The manufacture of cloth is an im-

portant industry, essential to the welfare of the community. There is no reason why men should not be permitted to engage in it. Indeed, the statute before us recognizes it as a legitimate business, into which anybody may freely enter.

"The right to employ weavers, and to make proper contracts with them, is therefore protected by our constitution; and a statute which forbids the making of such contracts, or attempts to nullify them, or impair the obligation of them, violates fundamental principles of right which are expressly recognized in our constitution. If the statute is held to permit a manufacturer to hire weavers, and agree to pay them a certain price per yard for weaving cloth with proper skill and care, it renders the contract of no effect when it requires him, under a penalty, to pay the contract price if the employe does his work negligently and fails to perform his contract. For it is an essential element of such contract that full payment is to be made only when the contract is performed. If it be held to forbid the making of such contracts, and to permit the hiring of weavers only upon terms that prompt payment shall be made of the price for good work, however badly their work may be done, and that the remedy of the employer for their derelictions shall be only by suits against them for damages, it is an interference with the right to make reasonable and proper contracts in conducting a legitimate business, which the constitution guarantees to every one when it declares that he has a 'natural, essential, and unalienable' right of 'acquiring, possessing and protecting property.' Whichever interpretation be given to this part of the act, we are of the opinion that it is unconstitutional."

The supreme court of Ohio, in State v. Lake Erie Iron Company, 25 Bulletin, 101, 36 Bulletin 6, declared that a statute requiring corporations to pay their employes at least twice a week, was void and unconstitutional, and that its execution would conflict with the inalienable, natural right possessed by every citizen, to make any sort of a contract desired by him concerning the legitimate disposal and use of his own labor and his own property as well.

It is a well settled principle of law, that all legislation which either directly or indirectly destroys or affects individual rights, is absolutely null and void. Wally's Heirs v. Kennedy, (Tenn.), 2 Yerg., 554.

In Bowe v. Printing Company, 59 N. W, 362, the supreme court of Nebraska held, that "a statute declaring that * * * for all classes of mechanics, servants and laborers, excepting those engaged in farm or domestic labor, a day's work should not exceed eight hours; and that for working any over the prescribed time, the employer should pay extra compensation, for the excess over eight hours, was void and illegal, for the reason:

"First:—Because the discrimination against farm and domestic labor is special legislation; and,

"Second:—Because by the act in question, the constitutional right of parties to contract with reference to compensation for service is denied."

In Godcharles v. Wigeman, 6 Atl., 354; 113 Pa. St., 431, the supreme court of Pennsylvania considered the validity of an act of the legislature, making all orders given by employers engaged in the business of manufacturing, to their workmen, payable in goods, or anything but money, void. In passing upon these sections of the act, the court said:

"They are utterly unconstitutional and void, inasmuch as by them an attempt has been made by the legislature to do what, in this country, cannot be done; that is, to prevent who are *sui juris*, from making their own contracts. The act is an infringement alike of the rights of the employer and the employe * * * * he may sell his labor for what he thinks best,—whether money or goods,—just as his employer may sell his iron or coal; and any and every law that proposes to prevent him from so doing, is an infringement on his constitutional privileges, and consequently vicious and void."

The supreme court of Illinois, in Braceville Coal Company v. People, 35 N. E., 62, declare: "There can be no liberty protected by government which is not regulated by laws which will preserve the rights of each citizen to pursue his own advancement and happiness in his own way, subject to the restraints necessary to secure the same rights to all others. The fundamental principle upon which liberty is based, in free and enlightened governments, is equality under the law of the land. It has, accordingly, been everywhere held that 'liberty,' as that term is used in the constitution, means not only freedom of the citizen from servitude and restraint, but, indeed, to embrace the right of every man to be free in the use of his powers and faculties, and to adopt and pursue such vocation or calling as he may choose, subject only to the restraints necessary to secure the common welfare."

It is apparent from a careful examination of the opinion of many courts of last resort, that the ordinance attacked in the case at bar, unlawfully attempts to limit and destroy the inalienable right possessed by every citizen to make any sort of a contract desired by him concerning the proper use and disposal of either his labor or his property. In other words, man's labor is his property, and he has a right to make any lawful contract he sees fit with reference to compensation for his own property; that is, his own labor. The fundamental law of both state and nation, gives every citizen the inalienable right to dispose of his labor in the wage-market for whatever he deems best; and, therefore, a despotic, arbitrary, vicious and utterly defenseless ordinance, depriving him from so doing, is an infringe-

ment on his constitutional privileges; and, consequently, absolutely null and void.

Now, does the city council possess the needful and necessary power to enable it to declare by the said ordinance, that all specifications for doing work for the municipality shall have a provision inserted therein: "Provided, that any and all common labor performed on such work, or the making of any such improvement · as may be contemplated, and in pursuance of any such specifications, shall receive not less than $1.50 per day. * * *.

Furthermore, does this provision of the ordinance conflict with the mandatory requirement of the statutory law of the state, that all contracts for municipal work shall be awarded to the lowest responsible bidder. Let us see. The Federal Plan Law, (88 O. L., 304), for the government and control of the city of Cleveland, fully and clearly defines the duties of the director of law, and provides how contracts for letting city work must be awarded, as shown by the following sections thereof:

Section 62:—"The department of law shall be under the charge of a director of law, to be appointed by the mayor, as hereinbefore provided, who shall be known as the corporation counsel, and who shall be the head of said department."

Section 64:—"The director of law * * * shall prepare · all contracts, bonds, and other instruments in writing, in which the city is concerned, and shall endorse on each his approval of the form and correctness thereof, and no contract with such city or any of its departments, shall take effect until he has endorsed thereon such approval." * * *.

Paragraph 6, of section 76:—"None but the lowest and best responsible bid shall be accepted." * * * * *.

In an unusually learned and able opinion, the supreme court of Pennsylvania, in Frame v. Felix, 167 Pa. St., 47; 31 Atl., 375, declared that, "A provision in the specifications of a municipal contract for waterworks, requiring the contractor to employ no one, not a citizen of the United States, and to pay no man a less sum for his labor than $1.50 per day, is inconsistent with the act which requires that such work shall be let to the lowest responsible bidder."

The opinion of the court below in Frame v. Felix, was delivered by Judge Endlich, and the supreme court in passing upon the question presented in that case, adopted and affirmed the opinion of the court below. Judge Endlich's opinion is not reported in full in the 167 Pa. St., but is reported in full in 31 Atl. Rep., at page 375, and I desire to quote from the opinion there given, the following :—"Now, the difficulty with the specifications and proposed contract in this case, is that the former undertake to fix arbitrarily and in advance, the price of one of the important elements entering into the expense of the work to be done thereunder, by the stipulation that the contractor shall pay to the persons employed by him in the performance of the contract, not less than $1.50 per day, as wages. I am not now going to decide, because, as I have shown, it is unnecessary to decide, whether or how much that is in excess of average wages paid to persons employed in the kind of work contemplated in these specifications and this proposed contract. * * *. All that I am bound to say, or that is proper for me to say, is, that by attempting to fix in the specifications, on the basis of which proposals were invited, the minimum rate of wages to be paid by the contractor, the water-works board has withdrawn from possible competition, one of the essential elements of the work, every part of which it was required to submit to competition, and that thereby its invitation of proposals for the remainder of the work, its award of the contract therefor, and the proposed execution of said contract have been rendered illegal as in contravention of the mandate of the statute. * * *. It is, moreover, to say the least, extremely doubtful, and from what was said upon the argument, it would hardly seem to be supposed by anyone that the fixing of a minimum of wages to be paid to laboring men in the performance of municipal contracts, ever does put into the pockets of a single one of them employed by the contractors, one penny more than what his labor would at the time command in the community. The wages of labor are not controllable in that way.

"If the average wages paid for labor of the kind required are equal to the rate thus prescribed, such a stipulation is an entirely nugatory one. If the average is less, the contractor, whoever he may be, will ordinarily pay just what the average is, and nothing more. In either event the laboring man will be none the better off because of such a stipulation, unless it be enforceable under a valid contract. But I am not now deciding, because it is not before me, that every contract between a municipality and a contractor containing a stipulation as to the minimum rate of wages to be paid by the latter, is necessarily void, or that such a stipulation in any such contract is unenforceable. Nor, for the same reason, am I deciding anything as to the right of the city or any department to fix the wages to be paid to laboring men employed directly by it. I am dealing here only with the question of its right to prescribe in its specifications and invitation for bids the rate of wages to be paid by others in the performance of such works as it is required by law to throw open to competitive bidding and to award to the lowest bidder, and with the question of the legality of a contract to be made, in the face of such a requirement, upon the basis of specifications so framed and conditioned in advance of the bidding and awarding of the contract. Neither am I passing upon the city's right, in such work and such contract, to require the employment of American citizens only, and to insist upon the same, a question

which is not material to the decision of this case; and I repeat that I am not deciding that the average rate of wages in this city is or is not $1.50 per day, or that the labor required in the performance of the work contemplated by the proposed contract could or ought to be obtained at a less rate of wages. I am simply deciding that, in asking for proposals as to that work, and in framing its specifications therefor, as the basis of such proposals, the water board had no right to fix, in advance, any rate of wages to be paid by the contractor, whether it be too high or too low, and that, therefore, its past and intended action in the premises cannot be sustained."

Under the plain provisions under the Federal Plan law it is the duty of the director of law to indorse his approval on all contracts with the city as to "the form and correctness thereof, and no contract * * * shall take effect until he has indorsed thereon his approval." And, furthermore, all contracts for municipal work must be awarded to the lowest responsible bidder.

Quoting substantially the language of Judge Owen, in State v. Auditor, 43 Ohio St., 320-1, the right to a writ of mandamus to compel Miner G. Norton, as director of law, to certify to the legal "form and correctness" of the paving contract "depends upon its legal duty, and not upon his doubts. If his duty is clear, its performance will not be excused by his doubts concerning it, however strong and honest they may be."

In this case, Mr. Norton's approval was not withheld simply because he had a mere captious doubt as to whether he had authority to approve the contract or not, but because he had a firm and abiding conviction that it was his legal duty to withhold his approval thereof. Under the rule announced in State v. Auditor, supra, Mr. Norton can "defend against an application for mandamus to compel him to approve the form and correctness" of said contract, "by showing that the city council had no power to enact said ordinance."

"Mandamus is a high prerogative and remedial writ, the appropriate functions of which are the enforcement of duties to the public, by officers and others, who either neglect or refuse to perform them."

Com. v. Allegheny County, 37 Pa. St., 279.

Therefore mandamus will not lie to compel a public officer, clothed with discretionary or quasi judicial power, to comply with the provisions of an ordinance wholly unauthorized by law, and consequently void, vicious and unconstitutional.

Now, for the reason already stated, we think that the defendant's answer states facts sufficient to constitute a full, perfect and complete defense, and the demurrer thereto will therefore be overruled. Judgment accordingly. Exception noted.