A. J. McDermott, v. Patrick Mahoney, Appellant.

**Contracts:** INSTRUCTIONS: PREJUDICE. Under allegations alleging
1 the execution of a written instrument by one of the parties and its oral acceptance by the other, which were supported by the evidence, an instruction referring to the instrument as a written contract of the parties was not prejudicial to defendant, who made no question until after verdict that the contract was oral and therefore a variance between the pleading and proof was presented, and who requested an instruction in which he referred to the instrument as the writing sued on.

**Written contracts.** A written instrument purporting to set forth
2 mutual obligations, signed by one of the parties and accepted and acted upon by the other, becomes their written contract in the same sense as though signed by both.

**Instructions:** WHEN ERROR MAY NOT BE ASSIGNED. A party cannot
3 complain of an instruction given at his request although it may be erroneous and confusing.

**Admission of evidence:** WAIVER OF ERROR. A party objecting to certain
4 tain evidence but subsequently requesting an instruction limiting its consideration to the question of credibility of a witness, which is given, cannot thereafter contend that it was inadmissible for any purpose. On rehearing this rule is held inapplicable to this case, as the anonymous letter objected to was offered and received before the writing of it was denied, but it is held admissible, however, as bearing on the real issue in the case.

**Evidence:** ADMISSIONS ON FORMER TRIAL. The admissions of an attorney
5 torney for his client appearing in the record of one trial may be shown on a subsequent trial, subject to explanation that they were made by mistake or without authority.

**Agency:** COMMISSION FOR SALE OF LAND: RIGHT OF RECOVERY. Under
6 a contract to pay a commission for the sale of land providing

for its payment when the agent had made a written contract of sale for the owner, or had produced a purchaser, ready, able and willing to buy on the terms specified, the right of the agent to recover is not dependent upon his having closed the sale, where he is relying for his recovery on the fact that he produced a qualified purchaser.

**Appeal:** NEW TRIAL: REVIEW. Where a motion for a new trial refers to error in overruling a portion of appellant's motion for a directed verdict, on the ground that the demand sued on was not due and the action was prematurely brought, but the motion to direct is not in the record, the appellate court will not undertake to determine whether the objection was there sufficiently raised.

**Agency:** COMMISSION CONTRACTS: CONSTRUCTION. An agency contract for the sale of land may provide for payment of commissions when a binding contract of sale under authority of the owner is made, or when a purchaser is produced to whom a sale is made, or upon production of a purchaser ready, able and willing to buy on the terms stated. In the instant case the contract is construed to provide for commissions either upon the making of a contract by the agent, or the production of a qualified purchaser.

**Same.** Where a cause has been tried and submitted on the theory that an agent was entitled to his commission if the purchaser produced was ready, able and willing to buy, the owner cannot shift his ground on appeal and claim a reversal because a binding contract of sale by the agent is not shown, where the contract provided the two methods of earning the commission, but the performance of one only was a condition precedent to the right of recovery.

**Same.** Where an agent for the sale of land has done everything which he is called upon by his contract to do in furnishing a purchaser ready, able and willing to buy, the owner cannot defeat his right to compensation by refusing to make the sale.

**Same:** RECOVERY OF COMMISSIONS: SUFFICIENCY OF EVIDENCE. The question of whether an agent is entitled to his commission for having found a purchaser ready, able and willing to buy depends upon the evidence of the purchaser's readiness, willingness and ability; and to establish the same it is not necessary that the purchaser have with him at the precise time of the offer the amount of a cash payment to be made, if his ability is shown to furnish the same within a reasonable time; and a refusal of the owner to complete the sale is a waiver of the right to insist that the purchaser proceed further to demon-

strate his ability.  Evidence held sufficient to sustain a finding of ability to purchase.

**Same.**  An owner having elected to repudiate a sale to a purchaser furnished by his agent according to contract, cannot afterward refuse to pay his commission for some reason which might have been obviated if insisted upon at the time.

Weaver, J., dissenting.

*Appeal from Green District Court.*— Hon. Z. A. Church, Judge.

Saturday, September 26, 1908.

Action to recover a commission for the sale of real estate.  Verdict and judgment for plaintiff, from which defendant appeals.  *Affirmed* on rehearing.

*B. I. Salinger* and *Owen Lovejoy,* for appellant.

*Rose & Henderson* and *E. B. Wilson,* for appellee.

McClain, J.— The first trial of this case in the lower court resulted in a judgment for defendant on a directed verdict, which was reversed on appeal.  See 119 Iowa, 470. On the second trial there was a verdict for the plaintiff and judgment thereon, from which the present appeal was taken, and the judgment was affirmed; but, a rehearing having been granted, the case is now before us for final determination. The essential facts to be considered in passing upon the alleged errors relied on in the present submission are as follows:  The defendant on May 30, 1899, signed and delivered to plaintiff a written instrument appointing plaintiff his agent and authorizing him to sell two tracts of land, one in Calhoun county and the other in Greene county, otherwise specifically described, for an agreed commission of $1 per acre, which agreement was to be in force for one year. In this instrument the defendant authorized the plaintiff to

enter into a written contract for him and on his behalf for the sale of said property, and also agreed to pay plaintiff " the above-named commission as soon as the deal is made for making such transfer or deal, sighting (sic) me to a prospective buyer or being instrumental in any manner whatever." The terms of sale named in the instrument were " $35 per acre, $2,000 cash; balance will give time on at 6 per cent. interest." On May 21, 1900, the plaintiff produced to the defendant as a prospective buyer one Cathcart, who as the evidence tended to show said to the defendant that he had come in answer to an advertisement of plaintiff, which he had seen, and stated that he believed that he would buy the Greene county land at $35 per acre. Defendant replied that he would not sell it at that price, and that $40 per acre was the lowest price that would buy it. Cathcart inquired whether he had not listed it at $35 per acre, and defendant said: " Yes; but it is worth more money, and I won't let it go at that price." Thereupon the plaintiff told defendant that if he did not sell according to the contract plaintiff expected him to pay his commission, and defendant said, " I will pay you your commission;" that he would rather pay such commission, because he would rather lose $1 an acre than lose $5 on the price. Defendant also said that, even if he wanted to sell, his wife would not sign the deed, but that he would go into the house and see her, and he then reported that she was not satisfied to sell, and Cathcart, with plaintiff, terminated the interview.

There was testimony of Cathcart to the effect that at the time this conversation was held with defendant he was ready, willing, and able to buy the land on the terms set forth in the written instrument and in the advertisement, including the payment of $2,000 cash; that he did not have that amount of money with him but that he could have procured it within one or two days. There was further evidence tending to show that later in the same day at plaintiff's office Cathcart had another conversation with defendant with ref-

erence to the purchase of the farm on somewhat different terms from those embodied in the written instrument and advertisement; but no arrangement was perfected, and Cathcart made no further effort at that time to effect the purchase. Subsequently there were further negotiations between Cathcart and defendant with reference to the purchase of the Greene county land, and also with reference to the Calhoun county land; but these negotiations did not result in a sale. In the meantime, however, plaintiff had claimed his commission from defendant on the ground of the production of Cathcart as a purchaser ready, willing, and able to pay; and this action is brought on the theory that plaintiff's commission, as provided for in the written instrument, became due on the refusal of defendant to accept the purchaser thus offered — plaintiff's allegation being that pursuant to and in conformity with the provisions of said written contract, set out as an exhibit to plaintiff's petition, plaintiff did on May 21, 1900, procure a purchaser ready and willing to purchase upon the terms agreed upon in the written contract, who offered to pay the price named therein, but that the defendant then and there refused to sell said land at the price stated and demanded a greater price. Plaintiff also alleged by way of amendment that he cited defendant to a buyer, and was instrumental in bringing defendant and said buyer together, and that he had performed the conditions of the contract on his part.

In a second amendment the plaintiff alleged that defendant made and delivered to him his certain contract and agreement (referring to the same instrument set out as an exhibit to the original petition), which the plaintiff orally accepted, and that plaintiff entered upon the performance of said contract with the full knowledge of the defendant; that plaintiff found a purchaser at and upon the terms and conditions therein stated, whom he produced to the defendant; that the defendant refused to comply with the terms of the contract and the agreement, and refused to make and execute

a conveyance of said real estate upon the terms and conditions
stated in said contract, demanding a greater price than that
specified; and, further, that Cathcart as such prospective pur-
chaser was then and there ready and willing to purchase at
and upon the terms and conditions specified and agreed upon
in said contract and agreement, and by the refusal of de-
fendant to comply with the terms of the agreement plaintiff
was prevented from a further compliance and defendant
thereupon waived a further compliance; that plaintiff then
and there demanded of and from defendant the payment of
plaintiff's commission as provided in said contract, and that
no part of said sum has ever been paid; and that, but for
the refusal of the defendant to comply with the contract and
agreement, said Cathcart would have purchased said real es-
tate at and upon the conditions and terms specified.    Defend-
ant denied generally the allegations of plaintiff's petition and
the amendments thereto, and for further answer alleged a ma-
terial alteration of the instrument, thus raising an issue
which was submitted to the jury and found against the de-
fendant.    With reference to this issue of alteration no ques-
tion is now raised, and the only issue of fact with which we
are concerned is that relating to the performance by plain-
tiff of the conditions of the contract and agreement to be by
him performed entitling him to his commission.

    I.    One of the contentions for appellant is that plaintiff
sought recovery on a written contract, and the court in-
structed the jury that there could be no recovery by plain-

1. CONTRACTS: in-   tiff unless the jury found that the plaintiff and
structions:
prejudice.      defendant entered into the written contract
pleaded by defendant and introduced by him in evidence,
and that as the contract thus pleaded and proven was signed
only by the defendant, and was orally accepted by the plain-
tiff, the contract was oral, and not in writing, and the plain-
tiff could not, therefore, recover; there being a variance be-
tween the allegations and the evidence.    It is to be noticed,
however, that plaintiff in his amendment expressly alleged

the execution and delivery by defendant of the written instrument, and its oral acceptance, and the performance thereof by plaintiff.

It further appears that in the instructions asked by defendant and given by the court the instrument is expressly referred to as the writing sued upon, and that the question of variance between the allegations in the pleadings and the evidence as offered in support thereof was in no way raised until after verdict. As the plaintiff expressly relied upon a writing executed by defendant and orally accepted by plaintiff and acted upon by him, and the evidence tended to support the allegations in this respect, there was no prejudicial error in referring to the instrument as a written contract. It is not claimed that the written instrument signed and delivered by defendant and acted upon by plaintiff was not a mutually binding obligation or contract. The claim is that it was not a written contract. As there is no controversy with reference to the obligations of the parties arising by the delivery of the instrument and its acceptance, we fail to see any possible prejudice which could have resulted to defendant from the reference in the instructions to the instrument as the written contract of the parties.

Further, we think that a written instrument purporting to set forth the mutual obligations of a contract, which, though unilateral in form and signed by one party only, is, 2. Written con- by him delivered to the other and accepted tracts. as the contract between the parties, is a written contract. Where a written agreement signed by one party is accepted and adopted by the other, and acted upon, it becomes their contract in the same sense as though both parties had signed it. *Attix v. Pelan*, 5 Iowa, 336; *Dows v. Morse*, 62 Iowa, 231; *Sellers v. Greer*, 172 Ill. 549 (50 N. E. 246, 40 L. R. A. 589); *Vogel v. Pekoc*, 157 Ill. 339 (42 N. E. 386, 30 L. R. A. 491); *Horn v. Hansen*, 56 Minn. 43 (57 N. W. 315, 22 L. R. A. 617); *Bigler v. Baker*, 40 Neb. 325 (58 N. W. 1026, 24 L. R. A. 255); *Graves v. Smedes'*

*Adm'r,* 7 Dana (Ky.) 344; *Woodlock v. Meyerstein,* 5 Mo. App. 591. The cases relied on for appellant relate to the question of mutuality, and hold that a written proposition, not accepted, does not become a written contract. It would certainly be a startling proposition to announce that an action by the grantee on the covenants of a deed signed by the grantor and accepted by the grantee is an action on an oral contract, barred under our statute of limitations in five years, rather than an action on a written contract, barred only in ten years from the beach thereof (see *Mitchell v. Kepler,* 75 Iowa, 207; *Yancey v. Tatlock,* 93 Iowa, 386) ; or that oral evidence of contemporaneous conversations is admissible to vary the terms of a written instrument purporting to contain the mutual agreement of the parties, signed by one and accepted by the other as containing such agreement. There is no reasonable ground nor authority for saying that such an instrument is not a contract in writing.

II. On the examination of defendant as a witness he was asked whether he had written an anonymous letter to the plaintiff with reference to the trouble between them, advising

**3. Instructions: when error may not be assigned.** him in substance that he was likely to get hurt if the case should go against the defendant or the defendant should be put to any expense by reason of such controversy. Defendant denied any responsibility for or knowledge of the writing of the letter. There was testimony tending to show the letter to be in defendant's handwriting, and it was admitted in evidence over objection of defendant. The court gave an instruction, requested by defendant, with reference to this evidence, to the effect that the jury might consider the writing of the letter, if it were shown to have been written by the defendant, as establishing the fact that defendant had sworn falsely or mistakenly,. but should give effect to such evidence only as bearing on the credibility of defendant as a witness, and not as establishing that the proposed purchaser was ready, willing, and able to buy on the terms of the writing signed by the

defendant. This instruction counsel for defendant charac-
terizes as erroneous and confusing, and perhaps the instruc-
tion is open to this objection; but, as it was given on defend-
ant's request, he cannot complain.

Nor can defendant complain of the admission of the
letter in evidence over his objection, in view of this instruc-
tion directing the jury to consider it for only a specific pur-
pose, for which by the requested instruction he
admits that it might properly be considered.
Had the defendant asked an instruction that the admitted
evidence should not be considered for any purpose, his ob-
jection to the admission of the evidence would have been
fully preserved. Had no instruction whatever been asked
upon the subject, the court might notwithstanding have cured
the error, if any there was, by directing the jury not to con-
sider the letter in reaching a verdict. But, after defendant
had specifically asked that the consideration of the evidence
be limited to its bearing upon the credibility of defendant's
testimony, the court was not called upon to assume that the
defendant still relied upon the admission of the evidence as
constituting error, and might properly give the instruction
asked, without further attention to the question whether the
admission of the evidence for that purpose was erroneous.

In rebuttal plaintiff offered in evidence a portion of the
transcript of the evidence on the former trial, showing
that, when the attorney for plaintiff on that trial sought to
show that defendant did not offer to sell to
Cathcart at the price named in the contract,
the attorney for defendant admitted that there was no such
offer. Counsel for defendant claim that there was error in
admitting this evidence over defendant's objection, contend-
ing that the admission of counsel for a party on one trial of
a case does not constitute an admission on another trial. This,
no doubt, is true; but that admissions made for a party, in
pleadings or otherwise, appearing in the record of one trial,
may be shown on another trial, subject, of course, to the

4. Admission of
EVIDENCE:
waiver of
error.

5. Evidence: ad-
missions on
former trial.

explanation that such admissions were made by mistake
or without authority, seems to be well settled.  *Peden v.
Chicago R. I. & P. R. Co.,* 78 Iowa, 131; *Shipley v. Rea-
soner,* 87 Iowa, 555; *Ludwig v. Blackshere,* 102 Iowa, 366.
Whether or not the exception to the admission of this testi-
mony was well taken is immaterial, however; for the court
instructed the jury at defendant's request that such an ad-
mission was not conclusive, and did not deprive the defendant
of the right to show by testimony that the fact was other-
wise than in accordance with this admission.   What was said
as to the alleged error in the admission of the anonymous let-
ter is also applicable here.   It is not open to the defendant,
after having requested the court to instruct the jury as to the
effect to be given to this evidence, to now contend that it was
inadmissible for any purpose.

III.   The contract between defendant and plaintiff pro-
vided that plaintiff might make a written contract for de-
fendant for the sale of the property on the terms specified.

6. AGENCY: com-
mission for
the sale of
land: right
of recovery.
It further provided that defendant would pay
plaintiff the agreed commission " as soon as ·
the deal is made for making such transfer or
deal sighting me to a buyer or being instrumental in any man-
ner whatever."  Plaintiff did not attempt to earn his commis-
sion by entering into a written contract for defendant for
the sale of the property, perhaps for the reason that the
proposed purchaser was not willing to accept such a con-
tract; but he did attempt to earn his commission by citing the
defendant to a buyer — that is, by producing a purchaser
ready, willing, and able to make the purchase on the terms
specified.   It is contended for appellant that no commission
ever became due the plaintiff because no deal was ever made,
and that, if defendant by his wrongful act prevented a deal
being made by refusing to make the sale to the proposed
buyer on the terms specified in the writing, then plaintiff's
remedy is for the wrong of the defendant in making it im-
possible for plaintiff to bring about the condition on which

payment was to be made. Of course, if the agreement had been that a commission should be paid only when a sale was effected, the plaintiff would not be entitled to the commission specified in the contract, in the absence of any sale being effected, though he might be entitled to damage for the wrongful act of the defendant in preventing the sale. *Milligan v. Owen,* 123 Iowa, 285; *Ormsby v. Graham,* 123 Iowa, 202; *Metzen v. Wyatt,* 41 Ill. App. 487; *Flower v. Davidson,* 44 Minn. 46 (46 N. W. 308). But here the right of the plaintiff to a commission was not dependent solely upon perfecting a sale. True, he was to be entitled to his commission if a sale were made by him, exercising his authority to bind the defendant by a written contract of sale; but he was also to be entitled to the same commission if he cited the defendant to a buyer, and for these services his commission was not dependent upon the deal being made. This construction of the contract was accepted by the defendant throughout the trial of the case in the lower court.

Defendant interposed a plea in abatement after the conclusion of the evidence; but this amendment was stricken from the files on plaintiff's motion, and while the defendant preserved his exception to this ruling, he does not rely upon it in his brief or argument as constituting error.

On the trial he asked instructions, which were given, to the effect that plaintiff might recover if plaintiff produced a purchaser able to pay the money called for by the terms of sale contained in the writing sued on, and neither by motion for new trial nor by motion in arrest of judgment did he contend that the commission, if earned, was not payable until a sale was made. The motion for a new trial does refer to error in overruling that part of defendant's motion to direct a verdict which asserted that plaintiff's demand was not due and that suit was prematurely brought thereon; but, as the motion to direct a verdict is not in the record, we cannot say whether the objection was there sufficiently raised.

7. Appeal: new trial: review.

Aside from all this, we think the contract should be construed, as already indicated, as referring to either a transfer or deal on the one hand or producing a purchaser on the other, and that the transfer relates to a completed contract, either by the agent under his authority or by the defendant, while the deal relates to the production of a purchaser ready, willing, and able to purchase on the terms specified. At least three different methods of earning a commission under an agency contract for the sale of real estate may be provided: First, by effecting a binding contract of sale under authority given to the agent to make such contract for the principal; second, by producing a purchaser to whom a sale is in fact made; third, by producing a purchaser ready, willing, and able to buy on terms specified in the agency agreement. *Blodgett v. Sioux City & St. P. R. Co.,* 63 Iowa, 606; *Rounds v. Alee,* 116 Iowa, 345; *Cassady v. Seeley,* 69 Iowa, 509; *Bird v. Phillips,* 115 Iowa, 703. We think the contract, reasonably construed, provided for a commission either on the making of a sale by plaintiff on the terms specified or on the production of a purchaser ready, willing, and able to buy on such terms.

<div style="margin-left:2em">8. AGENCY: commission contracts: construction.</div>

All the instructions asked by defendant, many of which were given as asked, assumed that plaintiff had performed his contract and was entitled to his commission .if Cathcart was ready, willing, and able to make a contract such as described. Defendant ·cannot shift his ground in this court, and have a reversal on the ground that the actual closing of a contract between Cathcart and defendant was a condition precedent to plaintiff's right to, recover.

<div style="margin-left:2em">9. SAME.</div>

And, finally, it is elementary that, where one party to a contract attempts to perform and the other refuses performance, the former may recover as effectually as though performance had been completed; the refusal to accept performance being a ·waiver of

<div style="margin-left:2em">10. SAME.</div>

any further effort on the part of the party offering the performance to carry out the terms of the contract. Such waiver was expressly pleaded by the plaintiff, and the evidence tended to establish it. In the absence of any error in the trial relating to the issue with reference to a waiver, the plaintiff is entitled to the verdict which was secured. We are not cited to any authorities which hold that, where one party attempts to perform and the other is in such a situation that performance might have been accepted by him and the contract completed, the plaintiff is debarred from recovery under the contract and must rely on an action for damage for refusing to allow him to carry out his contract and become entitled to the consideration agreed upon. Where one party to a contract in fact does everything which he is called upon to do to entitle him to the compensation provided for, the other party cannot, by refusal on his part to go on, defeat recovery under such a contract. *Larned v. Dubuque,* 86 Iowa, 166, 181; *Duclos v. Cunningham,* 102 N. Y. 678 (6 N. E. 790) ; *Stanton v. Barnes,* 72 Kan. 541 (84 Pac. 116). The plaintiff did everything which by the contract he was bound to do to entitle him to his commission if he produced a purchaser ready, willing, and able to buy on the terms of the contract, and defendant could not, by his own act in refusing to proceed, defeat recovery of the agreed compensation. The authorities cited on this point for appellant do not sustain his contention. The question is not here as to whether Cathcart became entitled to a deed, but whether plaintiff produced him as a purchaser ready, willing, and able to buy on the terms of the contract. It is true he would not have been entitled to a deed until he had paid $2,000 cash and executed a mortgage for the deferred payments; but these subsequent steps in the transaction essential to Cathcart's right to sue for specific performance or for damages did not concern this plaintiff. If Cathcart was ready, willing, and able to take the necessary steps, then plaintiff, by producing him to defendant, became entitled to his com-

mission.  If, when plaintiff produced Cathcart as a purchaser, defendant had put it out of his power to perform them, perhaps plaintiff would not have been entitled to his commission, but only to damages.  *Iselin v. Griffith,* 62 Iowa, 668.  The refusal of defendant to proceed was not based on the ground that he was unable to carry out the contract, but on his mere unwillingness to do so.  He recognized his obligation and ability to make the conveyance, but insisted that he would prefer to pay plaintiff's commission rather than carry out his contract.  Defendant cannot now resist payment of plaintiff's commission on the ground that, although Cathcart was ready, willing, and able, defendant refused to take the subsequent steps required of him to entitle plaintiff to receive such commission.  *Collins v. Paden,* 120 Iowa, 381.

IV.  The case as submitted to the jury involved the determination of two issues:  First, had the written instrument on which plaintiff sued been materially altered?  Second, was Cathcart, when presented by plaintiff to defendant as a prospective buyer, ready, willing, and able to buy on the terms fixed in the writing?  An instruction asked by defendant specifically limited the jury to the consideration of these two questions, and such instruction was given as asked. It is not contended that any instruction inconsistent with this was given.  As no complaint is made with reference to the submission of the issue as to material alteration, the finding of the jury on that issue is conclusive.  Sufficiency of the evidence to support the verdict depends upon whether the evidence as to the willingness, readiness, and ability of Cathcart was such as to justify a finding on that issue in plaintiff's favor.  On the former appeal (119 Iowa, 470), we held that it was competent for plaintiff to show what Cathcart said to defendant at the first interview with reference to his readiness and willingness to buy upon the terms mentioned in the instrument.  On this trial the same offered

11. Same: recovery of commissions: sufficiency of evidence.

evidence was received, with other evidence of Cathcart that he was then ready and willing to buy, and that he was able to do so, and could within a day or two have raised the money to make the necessary cash payment, if defendant had not refused to sell. This evidence was not contradicted. Cathcart did not testify that his ability to raise the necessary $2,000 was dependent upon the sale of his farm; but he testified generally as to his ability to raise that amount of money, if necessary, in order to effect the purchase. It is also to be noticed that subsequent conversations relating to the payment of only $1,000 in cash were not predicated upon any expression of doubt by Cathcart as to his ability to raise $2,000, but upon some proposed modification of the terms of the sale by which defendant was to be allowed to retain possession until the 1st of March following.

There was enough evidence to sustain the verdict as to Cathcart's ability to raise the money necessary to complete the purchase, unless, as counsel for appellant contend, no evidence of that fact was sufficient which did not show an actual tender of the cash, or at least the actual possession by Cathcart of that amount of cash in readiness to make a tender if required. It is to be noticed, however, that the issue was not as to performance by Cathcart of a contract to purchase by a specified time. The issue between plaintiff and defendant was simply whether Cathcart was ready, willing, and able. The cases relating to sufficiency of tender of performance of a contract to convey are not in point.

It is further to be noticed that there yet remained ten days within which plaintiff might furnish a purchaser under his contract and thus entitle himself to a commission; and the inability of Cathcart to make payment on the day on which he was presented to the defendant was not material, even though it can be said under the evidence he would not have been able to make the requisite cash payment on that day, if defendant had accepted him as a purchaser. By refusing to proceed to effect the sale to Cathcart, the defend-

ant waved the right to have him proceed further in demonstrating his ability to produce $2,000 in cash within such time as would have entitled the plaintiff to his commission. Had the refusal to proceed been based upon the inability of Cathcart to procure the money within the necessary time, the objection could no doubt have been obviated. *Duclos v. Cunningham*, 102 N. Y. 678 (6 N. E. 790).

It is to be borne in mind that under the contract between plaintiff and defendant the proposed purchaser was not bound to pay $2,000 cash until the defendant had furnished an abstract showing a perfect title and made a warranty deed in which his wife had joined. Had Cathcart been in the immediate physical possession of the money, he would not have been required to tender it until defendant had proceeded to the point of furnishing an abstract and being ready to deliver the necessary deed. Defendant, by his own act in refusing to make the sale in accordance with the terms of the agency agreement, prevented the negotiations from proceeding to that point. At the time of this repudiation all that was required of the proposed purchaser was that he be ready, willing, and able to go on with the purchase. When defendant had thus repudiated, it was not required of Cathcart that he go through the useless formality of procuring and tendering $2,000 in cash, which defendant had declared he would not accept. With reference to a contract of purchase we have said in *Kuhlman v. Wieben*, 129 Iowa, 188: " The statement that one will not comply with the terms of his contract excuses the other party from going through the useless formality of making a tender . . . True, he [the owner] did not say in so many words that he would not convey the land; but that such was the meaning of what he did say and do might have been inferred by the jury." That renunciation of the contract relieves the other party from any further obligation, and entitles him to sue at once for its breach, is well settled. *Roehm v. Horst*, 178 U. S. 1 (20 Sup. Ct. 780, 44 L. Ed. 953); *McCormick v. Basal*, 46

Iowa, 235.   In short, the complete answer to appellant's con-
tention is the finding by the jury under proper instructions
that plaintiff produced a purchaser ready, willing, and able
to buy, and who would have bought under the terms of the
contract, if defendant had not refused to sell, and that by
such refusal appellant waived further performance on the
part of the proposed purchaser and rendered it unnecessary
for him to proceed further in demonstrating his ability to
purchase and in carrying out the contract, which he would
have made with appellant, had appellant been willing to pro-
ceed with the negotiations.

The cases relied upon for appellant in this connection
do not support his contentions.   In *Mullenhoff v. Gensler*
(Super. Buff.) 15 N. Y. Supp. 673, especially urged upon
our attention, it appeared that the agent was to produce a
purchaser by the next morning ready, willing, and able to
buy the property for $10,000 cash; that the proposed pur-
chaser did not have that amount of cash, and expressly testi-
fied, as the court interpreted his language, that he needed
thirty days in which to raise it; and the court held that he
was not such a purchaser as required to entitle the agent to
his commission.   In that case the court expressly recognized
the right of the purchaser offered to a reasonable time, at
least until the conveyance should be prepared and the negoti-
ations concluded, within which to procure the money, and
evidently would have held that the agent was entitled to his
commission if the evidence had shown the proposed purchaser
to have been able to raise the money within such reasonable
time.   In *Dent v. Powell*, 93 Iowa, 711, the seller, instead of
repudiating the proposed sale, did everything in his power to
carry it out and gave the proposed purchaser every reasonable
opportunity to procure the money necessary to do so; and it
affirmatively appeared that the proposed purchaser could not
raise the money, though he had property from which the
claim against him, had the proposed sale been on credit in-
stead of for cash, might have been made.   The court simply

decided that the seller was not bound to waive a cash sale and contract for a sale on credit, under which it would probably have been necessary for him to resort to a suit in order to secure payment. In *Watson v. Brooks,* 11 Or. 271 (3 Pac. 679), it was held that the production by the agent, on the last day given him for performing his contract, of a purchaser able to pay the stipulated price, but willing to complete the purchase only on condition of being allowed further time to examine the title, did not entitle him to his commission; time being of the essence of the contract. As we have already said, the evidence established to the satisfaction of the jury, to whom the question was submitted, that the purchaser in this case would have been able to produce the money and carry out the contract of purchase within the time of the agency, if he had not been prevented from doing so by defendant's renunciation. In *Castner v. Richardson,* 18 Colo. 496 (33 Pac. 163), the contract of agency was not established, and the court held that the conceded rule that, where the owner engages the services of an agent to sell or negotiate a sale, the agent's compensation being made dependent upon the consummation of a sale and time not being of the essence of the contract, the agent is entitled to a reasonable time in which to consummate such sale after a purchaser has been found ready, willing, and able to buy upon the terms stated by the owner has no application, especially where the owner had expressly limited the time within which a person not his agent was to procure and pay over the purchase money. In *Hurd v. Neilson,* 100 Iowa, 555, the evidence failed to show that the agent had made or negotiated a sale in accordance with the authority given to him, and it was held that the agent had not shown himself to be entitled to the commission agreed upon; for he had failed to show either a completed sale or negotiations for a sale in compliance with the authority conferred upon him.

Among the many cases to which our attention is called by counsel for appellant we have failed to find a single one

which supports his contention that, to demonstrate the ability
of the purchaser to carry out the contract con-
12. Same.          templated in the agency agreement, it must be
shown that the proposed purchaser, when offered, has on
his person or instantly within reach the amount of cash re-
quired to make the purchase, where something further re-
mains to be done on the part of the seller before he is en-
titled to receive the cash payment and the latter repudiates
the proposed sale and refuses to proceed on the ground that
he is unwilling to sell on the terms of the agency agreement.
Having elected to repudiate, the appellant was not entitled
afterwards to mend his hold by insisting that, if he had not
repudiated the contract, the purchaser would not instantly
have been able to produce the required cash payment. That
a party who has elected one ground of objection cannot
afterwards mend his hold and select another, which might
have been obviated, had it then been insisted upon, is well
settled. *Donley v. Porter,* 119 Iowa, 542; *Stanton v.
Barnes,* 72 Kan. 541 (84 Pac. 116). " Where a party gives
a reason for his conduct and decision touching anything in-
volved in a controversy, he cannot, after litigation has begun,
change his ground and put his conduct upon another and dif-
ferent consideration." *Railway Co. v. McCarthy,* 96 U. S.
258 (24 L. Ed. 693).

V. There appears to be some contention on behalf of
appellant that plaintiff waived his right to insist on his com-
mission earned by producing Cathcart as a purchaser on
May 21st, by subsequently attempting at defendant's request
to induce Cathcart to purchase one or the other of the tracts
of land described in the contract of agency. We find noth-
ing in the pleadings suggesting any such issue, and the evi-
dence does not support any such claim. Before there were
any subsequent negotiations plaintiff had insisted that his
commission was earned and payable, and there is nothing to
indicate a waiver of his right to such commission. If plain-
tiff had subsequently at defendant's request induced Cath-

cart to buy, he might have been entitled to an additional commission, not under the original contract, for the subsequent negotiations did not contemplate a sale within the time specified in the original contract of agency, but under an implied contract to make compensation for services thus rendered. *Triplett v. Jackson,* 130 Iowa, 408. We have no occasion to decide this question, however, for the subsequent negotiations came to naught.

We have considered every phase of this case, and, finding no error to have been committed on the trial and that the verdict is supported by the evidence, the judgment is *Affirmed.*

WEAVER, J. (dissenting).— The rule in this class of cases, that to entitle an agent to commission the purchaser produced by him must be ready, able, and willing to buy the property on the authorized terms, is elementary. In the case at bar the plaintiff produced one Cathcart as a proposed purchaser. Testifying as a witness, Cathcart swears that he was willing to make the purchase and says in effect that he was financially " able " to pay for the land; but the record may be searched in vain for any showing that he was " ready " so to do. Giving his statement the most favorable interpretation for .the appellee, Cathcart had property and means upon which, had appellant been willing to make the deed, he could have raised the money in a short time. He says he owned three hundred and twenty acres of land on which he had a cash offer of $50 per acre, had notes and cash to the amount of about $6,000, and if appellant had agreed to make the deed he would have gone immediately to Lohrville and telegraphed a certain bank in Des Moines to telegraph the Lohrville bank to pay him $2,000. He was a stranger to both parties to this suit and to the bank at Lohrville, but says he could have procured identification by telephoning to Ft. Dodge or to Jefferson. He further says the Des Moines bank had accommodated him in this way before, and

he expresses confidence that it would have done so on this occasion.  Later on the same day the parties met at appellee's office, at which time Cathcart offered to pay $100 down and $900 on the following morning; and this, it may here be said, is the only definite offer made by the proposed purchaser to pay anything on that day or to fix a time in which he would pay anything.  He does not pretend that he explained to appellant his means or ability to make the purchase, and so far as appears his purpose to try to obtain the money by telegraph remained wholly undisclosed in his own mind. Let it be admitted for the purposes of the case that the land had advanced in value and appellant did not wish to sell if he could avoid it.  Even if such be the fact, it was none the less his privilege to refuse to waive a fair and full performance of the agency agreement on part of the appellee, or to accept as a purchaser a perfect stranger as to whose ability and good faith he had no information whatever, on the unsupported promise or representation of the latter that he could and would in the near future produce the money to meet the first payment.  The words " able " and " ready," as employed in the rule to which we have adverted, represent distinct ideas.  A purchaser may be a millionaire, and therefore be " able " to buy; but if, when, he meets the seller, he cannot make payment until he goes into the market and raises the necessary money, he is not " ready," and the production of such a purchaser is not sufficient to entitle the agent to recover a commission.  To be ready is to be " completely prepared as for immediate use, or for present requirement."  See definition in Century Dictionary.  It is further to be noted that the authority given the appellee was to produce a purchaser on the basis of a sale for $2,000 cash, with deferred payments for the remainder of the purchase price; but the time to be given and the amount of the several installments were not specified.  It follows by necessary implication that the purchaser thus produced must be one with whom the seller should be able to agree upon this essential

feature of the contract; otherwise, the commission to the agent would not be earned.    There was in fact no agreement in this respect, nor does there appear to have been any effort to settle the terms of the deferred payments.

It follows, for the reasons mentioned, that the judgment appealed from should be reversed.

## Supplemental Opinion.

Per Curiam.— On a petition for rehearing we have become satisfied that the reasons given in the first paragraph of the second division of the opinion for holding that the exception to the ruling as to the admission in evidence of the letter referred to was waived by the instruction asked on the subject are not sound as applied to every case in which a party excepting to the admission of evidence asks an instruction limiting its effect.    In this case the situation in that respect is peculiar.    The letter was offered and received before the defendant had denied writing it, and therefore it was not admitted as bearing on the question whether the defendant had testified falsely or mistakenly.    The writer of the opinion still thinks that when the counsel for defendant asked an instruction that the jury had a right to consider the writing of such letter, if it was written by defendant, as bearing on the question whether he had testified falsely and mistakenly, he waived objection to the introduction of the letter, which had not been admitted with reference to that issue.

But we all agree that the letter was properly admitted as having some bearing on the real issue in the case, as to whether plaintiff had established his cause of action against defendant.    The anonymous threatening letter, written to frighten plaintiff into abandoning the suit pending, was in the nature of an admission that plaintiff's cause of action was valid, and defendant was without legal defense thereto.    The court did not err in admitting the letter in evidence, and, while the instruction with reference thereto was erroneous

appellant cannot complain of the error in that respect committed at his solicitation and in his favor.— *Affirmed.*