No. 27,220.

C. M. Day, *Appellee*, v. The First National Bank, *Appellant*.

SYLLABUS BY THE COURT.

1. Contracts — *Agreement to Pay Back Rent—Breach—Damage for Loss of Sale—Ready, Able and Willing Purchaser*. The evidence considered in an action for damages for breach of a contract to pay back rent on a building occupied by a bakery, whereby an advantageous sale of the bakery was prevented, and *held*, the prospective purchaser was ready, able, and willing to buy.

2. Same—*Generally*. Minor assignments of error considered, and held to be without merit.

Appeal from Mitchell district court; William R. Mitchell, judge. Opinion filed March 12, 1927. Affirmed.

*Frank A. Lutz* and *Amzie E. Jordan*, both of Beloit, for the appellant.
*R. M. Anderson*, of Beloit, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one for damages for breach of a contract to pay back rent on a building occupied by a bakery, whereby an advantageous sale of the bakery was prevented. Plaintiff recovered, and defendant appeals.

Brokers, 9 C. J. pp. 600 n. 50, 655 n. 43.  Contracts, 13 C. J. p. 780 n. 39.

Klein owned the building, which was specially equipped with ovens and other fixtures for bakery purposes. Habiger, a tenant operating a bakery in the building, closed the bakery and went away, leaving rent unpaid amounting to $170. Habiger was heavily indebted to the First National Bank of Beloit, and the bank took charge of the bakery, with authority from Habiger to sell it. The bakery was a liability unless it could be operated, and George Eresch, vice president of the bank, commenced to tease Day to buy the bakery. Day was not a baker, had no use for a bakery, and did not have sufficient capital to pay for and operate the bakery. Eresch assured him that if he cleaned up the bakery, got a good baker, and got it going he could sell it at a profit, and after much solicitation Day purchased the bakery on the following terms: Klein was willing to rent the building to Day if the back rent were paid, but not otherwise, and the bank agreed to pay the back rent. Day was to receive a bill of sale from Habiger. Day was to give a chattel mortgage on the bakery for $2,500 (sale price), and the bank was to lend Day $500 on his personal note, to stock up and put the bakery in operation. In case Day sold the bakery, the bank was to accept the purchaser as debtor in place of Day. Papers were signed, and Day took possession of the bakery on November 13, 1922. The bill of sale from Habiger to Day was delivered later.

The bank did not pay the back rent. Day complained of the nonpayment several times, but Eresch put him off by saying there was no hurry, and Klein did not need the money. On one occasion Day said to Eresch that failure to pay the rent might block a trade and leave Day holding the bakery, when the idea was that he should sell it. Eresch said the bank would pay the rent. The rent was not paid, and the inevitable occurred.

On January 13, 1915, Ora Carroll, a baker of sixteen years experience, came from Nelson, Neb., to Beloit, for the purpose of buying the bakery and subsequently operating it. He offered to trade a quarter-section of land in Colorado for the bakery. Day was willing to accept the offer, provided his agreement with the bank respecting the indebtedness could be carried out. Day and Carroll went to the bank, Eresch told Carroll he could take over the indebtedness, and Carroll arranged with the bank to do so. Carroll intended his agreement with Day should be reduced to writing, and said to Eresch and Day, "If I can rent the building, I will come back and fix the

Day v. First Nat'l Bank.

papers." Carroll then went to see Klein. Klein would not rent the building until the back rent was paid, and would not agree to terms on which the building might be rented until the back rent was paid. Carroll did not feel he could take on any more indebtedness, and dropped the trade. The jury returned a verdict in favor of plaintiff for $500.

The court properly instructed the jury it was necessary for plaintiff to show that the person with whom he expected to trade was ready, willing, and able to consummate the trade. Defendant quotes from "Words and Phrases," second series, page 12, as follows:

"Under the rule that to entitle an agent to commission the purchaser produced by him must be ready, able, and willing to buy the property on the authorized terms, the words 'able' and 'ready' represent distinct ideas. A purchaser may be a millionaire, and therefore be 'able' to buy; but if, when he meets the seller, he cannot make payment until he goes into the market and raises the necessary money, he is not 'ready,' and the production of such a purchaser is not sufficient to entitle the agent to recover a commission. To be 'ready' is to be completely prepared, as for immediate use, or for present requirement. *McDermott v. Mahoney*, 115 N. W. 32, 40, 139 Ia. 292 (quoting and adopting definition in Century Dictionary)."

The quotation was not taken from the opinion of the court in *McDermott v. Mahoney*, but from a dissenting opinion. The action was one for a real-estate agent's commission. Cathcart was the proposed purchaser. He testified he was ready, able, and willing to buy the land, on the terms proposed, including payment of $2,000 in cash, that he did not have that amount of money with him, but he could have procured it within one or two days. The syllabus of the court's opinion reads as follows:

"The question whether an agent is entitled to his commission for having found a purchaser ready, able and willing to buy depends upon the evidence of the purchaser's readiness, willingness and ability; and to establish the same it is not necessary that the purchaser have with him at the precise time of the offer the amount of a cash payment to be made, if his ability is shown to furnish the same within a reasonable time; . . ." (*McDermott v. Mahoney*, 139 Ia., 292.)

In the opinion of Mr. Justice McClain it was said:

"The plaintiff did everything which by the contract he was bound to do to entitle him to his commission if he produced a purchaser ready, willing, and able to buy on the terms of the contract, . . . The question is not here as to whether Cathcart became entitled to a deed, but whether plaintiff produced him as a purchaser ready, willing, and able to buy on the terms of the contract. It is true he would not have been entitled to a deed until he

had paid $2,000 cash and executed a mortgage for the deferred payments; . . . If Cathcart was ready, willing, and able to take the necessary steps, then plaintiff, by producing him to defendant, became entitled to his commission." (p. 304.)

A transaction of sale or trade may be so conditioned that "ready" will mean instantly ready; but the decision of the Iowa court conforms to business custom, and correctly stated and applied the law. In this instance, the bank was ready on November 13, 1924, to sell the bakery to Day, although it was obliged to procure a bill of sale from Habiger, who was living in Junction City; and it was not at all necessary that Carroll should bring with him to Beloit an executed deed of the Colorado land in order to be ready to buy the bakery on January 13, 1925.

Defendant contends Carroll was not able to purchase the bakery. The record title stood in C. C. Houts. Carroll and his brother were partners in the real-estate business, and had acquired a deed of the land executed by Houts and wife, blank as to grantee, and unacknowledged. Carroll took this deed with him when he went to Beloit to trade for the bakery, and intended to use it in the trade. There is no presumption that his possession of the instrument and proposed use of it were unauthorized or wrongful. In April, following the negotiations for the bakery, Carroll sold the land, the name of the purchaser was inserted in the same deed, Houts and wife acknowledged it, and the deed was delivered to the purchaser. The First National Bank does not stand in the shoes of Houts or Carroll's partner, and as against the bank the evidence was sufficient to warrant the jury in finding Carroll was so situated that he was able to give title.

A mortgage on the land, some tax liens, and right of way and mineral reservations common to deeds of Union Pacific Railway Company lands in Colorado, appearing on the abstract, merely reduced net value of the quarter section. An outstanding contract between persons having no connection with the title did not affect the title.

The obligation of the bank to pay the back rent had reference to more than simple discharge of a debt. The special damages which plaintiff suffered were within contemplation of the parties, and were recoverable. There is nothing to indicate defendant suffered prejudice from an amendment of the petition. At the oral argument it

was suggested Day should have paid the back rent to minimize his damages. The record does not disclose the question was raised in the district court.

This fable teaches that a bank may profit by exercising the·same promptness in taking care of its own obligations which it expects those indebted to it to exercise.

The judgment of the district court is affirmed.